[Civ. No. 5874. Fourth Dist. July 22, 1959]

C. H. KERSHAW et al., Respondents, v. MARYLAND CASUALTY COMPANY (a Corporation), Appellant.

Dickenson, Sattinger & McKee for Appellant.

Horton, Knox & Carter for Respondents.

MUSSELL, Acting P. J.—This is an action brought against the defendant Maryland Casualty Company, a corporation, for damages for breach of a contract to insure. A jury trial resulted in a verdict against the defendant casualty company and it appeals from the judgment.

In 1952 a large quantity of sugar beet pulp was partially destroyed in a fire occurring at the Holly Sugar Plant near Brawley, California. Imperial Feeds Inc., a corporation, purchased the damaged beet pulp at the plant for the purpose of processing it for cattle feed. On August 28, 1952, Imperial Feeds entered into a contract in writing with Kershaw and Sons, Inc., wherein Imperial Feeds agreed to pay Kershaw and Sons $2.00 per ton for the handling and processing of the entire job, this sum to be paid by Imperial Feeds on out-turn weights when and as the pulp was processed and delivered. It was agreed that Kershaw and Sons were to supervise all operations; that all labor and materials and other costs connected with the job were to be paid by Imperial Feeds. It was agreed that the material would be moved to an airstrip in Holtville, which Imperial Feeds had leased

from the county of Imperial on August 22, 1952, for the purpose of drying, spreading and processing the pulp. The beet pulp, which had been sacked, was transported from the Holly Sugar plant to the airstrip by W. W. Topham and Sons, a trucking firm, and spread out on the runways to dry. Thereafter tractors equipped with scraper blades arranged the beet pulp into windrows. The specially constructed "shakers," which had been constructed by local welding firms, were pulled by tractors along the windrows and utilized to separate the desirable pulp from the paper, metal and large lumps of pulp contained in it. The useable pulp was then sacked and left on the airstrip to be picked up and transported therefrom by Imperial Feeds. The supervision of the processing by Kershaw and Sons ended when the beet pulp had been sacked and left to be picked up by Imperial Feeds and Kershaw and Sons had nothing to do with it after it was sacked.

On or about January 14, 1953, a fire occurred on the strip, destroying almost all of the beet pulp, sacked and unsacked. At that time there were approximately 2,000 tons of sacked material, valued at $40 per ton, and between 200 and 600 tons of material, valued at $20 per ton, yet to be processed and sacked. The bulk of the sacked material was to the east of the unsacked material. The wind was from the west to the east and the fire started in the beet pulp that had not been processed and was spread out on the airstrip. Apparently the fire was caused by a spark from welding equipment brought to the strip by one W. E. Maring and being used by him to repair one of the "shaker" machines which had broken down.

The workmen employed to do the work in processing the material were employed by Imperial Feeds and at the time they were employed were told that they were to be employees of Imperial Feeds. A Mr. Franco was one of the foremen employed by Imperial Feeds and, at his request, Maring, the welder, took his equipment to the strip to repair the "shaker" machine. The record shows that Kershaw and Sons made out checks to all of the workmen so that they could be paid every Saturday and Kershaw and Sons was reimbursed immediately by Imperial Feeds with the exact amount. The workmen were not carried on the payroll of Kershaw and Sons.

John R. Kershaw, who acted for Kershaw and Sons, testified that while he was at the airstrip on the morning of the fire, he was not there when the fire started and that, as far as he knew, neither he nor anyone else connected with Ker-

shaw and Sons had anything to do with the fire; that when it occurred he notified Carey Bros., plaintiffs' insurance agent, of the occurrence of the fire and "placed them on notice."

On or about January 14, 1955, Imperial Feeds instituted an action against Kershaw and Sons and others to recover damages for the destruction of 2,678 tons of damaged beet pulp, alleging that the negligence of the defendants caused the loss and destruction of the beet pulp, to their damage in the sum of $120,510.

It is admitted by Maryland Casualty Company that Kershaw and Sons "gave prompt notice to the defendant Maryland Casualty Company that the said civil action had been duly filed and served upon them; that plaintiffs tendered the summons and complaint to said defendant Maryland Casualty Company and notified the said defendant casualty company that plaintiffs looked to said defendant to defend said action and to pay all costs and expenses incident thereto, and any judgment rendered against plaintiffs in said action; . . . that the defendant Maryland Casualty Company failed and refused to defend said action on behalf of the plaintiffs and denied liability under said policy."

On January 12, 1956, there was filed in the action brought by Imperial Feeds an amended complaint in which Imperial Feeds sought damages against Kershaw and Sons, et al., as the result of their alleged negligence in processing the beet pulp involved. Apparently, this amended complaint was never served on Maryland Casualty Company. Thereafter plaintiffs Kershaw and Sons notified the casualty company that the action instituted by Imperial Feeds could in all probability be settled for a sum between $10,000 and $15,000 and that plaintiffs felt that, considering the liability and potential judgment in said action, it would be prudent to settle said action for an amount not to exceed $15,000. The casualty company refused to make any settlement on behalf of the plaintiffs and advised them that they were free to take any action they desired regarding settlement as there was no coverage under their policy. Plaintiffs then entered into an agreement and covenant with Imperial Feeds wherein Imperial Feeds agreed to dismiss their said action against plaintiffs and not to bring any further action against them arising out of said loss. In consideration of this agreement plaintiffs paid Imperial Feeds the sum of $12,000 and in addition thereto attorneys' fees and costs in the sum of $1,417.15. The present action was filed by plaintiffs to recover the damages alleged

to have been sustained by them as a result of the breach of contract to insure.

At the time of the fire there was in full force and effect a comprehensive liability insurance policy issued by the Maryland Casualty Company to C. H. Kershaw, et al. . . . Partnerships and Individuals. The policy provides, inter alia, as follows:

"*Coverage C—Property Damage Liability—Except Automobile.* To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident. . . .

"*Exclusions.* This policy does not apply: . . .

"(f) Under coverage C, to injury to or destruction of (1) property owned, occupied or used by or rented to the insured, or (2) except with respect to liability assumed under sidetrack agreements and the use of elevators or escalators, property in the care, custody or control of the insured, or (3) any goods or products manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, out of which the accident arises."

The first contention of appellant is that the evidence shows as a matter of law that plaintiffs failed to comply with the conditions precedent in the insurance policy prior to bringing suit. The argument advanced in this connection is that no written notice was given to appellant as required by paragraph numbered 9 of the conditions of said policy, which reads as follows:

"When an accident occurs, written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place, and circumstances of the accident, the names and addresses of the injured, and of available witnesses."

The insurance policy involved was countersigned by Carey Bros., by R. H. Carey as authorized agent of the company and there is substantial evidence that John R. Kershaw, acting for Kershaw and Sons, notified Carey Bros. of the fire immediately after it occurred and there is no evidence in the record that Carey Bros. required any further or different notice.

Section 554 of the Insurance Code provides as follows:

"Delay in the presentation to an insurer of notice or proof

of loss is waived, if caused by an act of his, or if he omits to make objection promptly and specifically upon that ground.''

There is no evidence in the record indicating that the casualty company objected promptly and specifically that notice of the action was not timely given. Moreover, when the summons and complaint were tendered in the Imperial Feeds suit, the company refused to defend said action on behalf of Kershaw and Sons and denied liability under the policy.

As is said in *Estrada* v. *Indemnity Ins. Co.*, 158 Cal. App.2d 129, 138 [322 P.2d 294]:

"An insurer may not thus repudiate a policy, deny all liability thereon, and at the same time be permitted to stand on the failure to comply with a provision inserted in the policy for its benefit. (Citing cases.)"

In *Artukovich* v. *St. Paul-Mercury Indem. Co.*, 150 Cal. App.2d 312, 326 [310 P.2d 461], relied upon by appellant, the court said:

"The failure of Artukovich Bros. to comply with the 'Notice of Injury, Claim or Suit' provision of Industrial's policy is nonetheless a breach notwithstanding the fact the company had notice of the injury and appeared in the proceeding before the Industrial Accident Commission.''

However, in that case there was no denial of coverage under the policy, as is the case here, and the question of waiver was not involved.

Appellant's next contention is that the evidence shows as a matter of law that the loss to Kershaw and Sons in the fire is within the exclusion clause of their policy of insurance. This argument is not persuasive. The pretrial order in the instant case indicates that one of the principal issues of law involved was whether the beet pulp involved was in the actual control, care or custody of Kershaw and Sons at the time of the fire and the question of whether there was coverage for the loss under exclusion (f)(3) of the policy was not stated as an issue in the case. No instructions were offered by counsel for appellant covering any exclusion other than the care, custody or control exclusion found in exclusion (f) (2) and the case apparently was tried on the theory that exclusion (f)(2) was the exclusion involved.

In *Ernst* v. *Searle*, 218 Cal. 233, 240, 241 [22 P.2d 715], the court said:

"The rule is well settled that the theory upon which a case is tried must be adhered to on appeal. A party is not permitted to change his position and adopt a new and different

theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant. (2 Cal.Jur., § 68, p. 237.)''

 The evidence before us supports an inference and a finding that the beet pulp being processed by Kershaw and Sons was in its care, custody and control at the time of the fire. However, there is substantial evidence to support a finding that approximately 2,000 tons of the beet pulp had been processed, sacked and set aside for Imperial Feeds and that Kershaw and Sons' custody and control of this material ceased when it was sacked and so set aside. This material was to be and was being picked up and transported for sale by Imperial Feeds and not by Kershaw and Sons. Under these circumstances the Maryland Casualty Company could not escape liability under the control, care or custody exclusion clause of the policy as to such material since it was destroyed by the fire.

 In *Wildman* v. *Government Employees' Ins. Co.*, 48 Cal.2d 31, 35-36 [307 P.2d 359], it was held that it is elementary in insurance law that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer; that if semantically permissible, the contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the losses to which the insurance relates; that if the insurer uses language which is uncertain any reasonable doubt will be resolved against it; and if the doubt relates to extent or fact of coverage, whether as to peril insured against, the amount of liability or the person or persons protected, the language will be understood in its most inclusive sense, for the benefit of the insured.

 Appellant claims that as a matter of law the amount of settlement made by Kershaw and Sons was not reasonable and it is argued that the only liability of Kershaw and Sons to Imperial Feeds could arise under the policy under the circumstances specifically excluded under its terms and that the settlement, if any, should have been in a token amount. It was alleged in the amended complaint in *Imperial Feeds, Inc.* v. *Kershaw & Sons, Inc.*, that the defendants negligently supervised, directed and managed the processing of the beet pulp involved. We cannot hold as a matter of law that the settlement should have been in a token amount, where, as here, the casualty company improperly refused to defend Kershaw and Sons in that action. Kershaw and Sons had the right to make any reasonable and bona fide compromise of the

action against them and the settlement entered thereon is presumptive evidence of the liability of the insured and the amount thereof. (*Ritchie* v. *Anchor Casualty Co.*, 135 Cal. App.2d 245, 258 [286 P.2d 1000].) The prayer in the complaint filed by Imperial Feeds was for $120,510 as damages. Some 2,000 tons of beet pulp, valued at $40 per ton, were destroyed by the fire and it does not appear that the amount of the settlement was unreasonable under the circumstances.

▮ It is further argued by appellant that any duty to defend would be based on the amended complaint filed by Imperial Feeds. This argument falls by reason of the denial by Maryland Casualty Company of liability under the policy and its refusal to defend the action brought by Imperial Feeds. As is said in *Grant* v. *Sun Indemnity Co.*, 11 Cal.2d 438, 440 [80 P.2d 996]:

"It is a well-recognized rule, which we conclude is applicable to the special circumstances here, that the insurer may not repudiate the policy, deny all liability, and at the same time be permitted to stand on a provision inserted in the policy for its benefit."

▮ In *Lamb* v. *Belt Casualty Co.*, 3 Cal.App.2d 624, 631 [40 P.2d 311], it was held that the law is well settled that, where one is bound either by law or agreement to protect another from liability, he is bound by the result of a litigation to which such other is a party, provided he had notice of the suit and an opportunity to control and manage it. ▮ Here, the casualty company had notice of the suit when the original complaint and summons were tendered to it and then had the right to control and manage the litigation. This it refused to do.

▮ It is argued that the facts set forth in the original complaint in *Imperial Feeds* v. *Kershaw & Sons, Inc.*, show as a matter of law that there was no coverage under appellant's policy. This argument is based upon the premise that any liability of Kershaw and Sons under the facts therein alleged would be within the exclusionary provisions of the policy. However, the complaint relates to a cause of action founded on either contract or negligence of Kershaw and Sons in processing and handling the beet pulp, the major portion of which was not under the care, custody or control of Kershaw and Sons.

▮ It is further contended that the amount of attorneys' fees and costs were not proved nor reasonable. The record

shows in this connection that Kershaw and Sons paid to their attorneys the sum of $1,417.15 for fees and costs in defending the action brought by Imperial Feeds and there is no showing that these charges were unreasonable. As is said in *Stevens* v. *Chisholm*, 179 Cal. 557, 564 [178 P. 128] : ''When it does not appear that the attorneys' fees and other expenses are obviously excessive, testimony of the amounts paid will constitute a *prima facie* case; and it will be assumed in such case that the attorneys' fees so paid were reasonable, unless the contrary appears.''

 Finally, appellant contends that many of the instructions to the jury were prejudicially erroneous. Instruction number 3 is criticized as incomplete and not containing all the issues in the case. However, it is not necessary to set forth all of the issues in one instruction and where, as here, the instructions as a whole sufficiently state the issues, no prejudicial error results.

 It is claimed that instruction number 4 limited defendant's contention to subdivision (f) (2) of the exclusionary clause of the policy. We find no words of limitation in said instruction and it merely states the contentions of defendant. As heretofore noted, the cause was tried upon the theory of custody, care and control of the pulp involved.

Instructions 9 and 19 are criticized for the same reason.

 Part of instruction 11 is as follows:

''If you find that the Defendant denied liability on its contract of insurance, Plaintiffs were free to defend on their own account, and had the right to settle the liability against them. The burden is on the Defendant to overcome the presumptive evidence that the settlement made by the Plaintiffs was reasonable and made in good faith.''

This instruction is criticized as placing the burden of proof on defendant to overcome the presumptive evidence. We find no prejudicial error in the quoted instruction. In *Lamb* v. *Belt Casualty Co., supra,* 3 Cal.App.2d 624, 631-632, the court said:

''On the other hand, where there is no trial and no judgment establishing the liability of the insured, but a settlement of the litigation has been made, the question whether the liability of the insured was one which the contract of insurance covered is still open, as is also the question as to the fact of liability and the extent thereof, and these questions may be litigated and determined in the action brought by the insured to recover the amount so paid in settlement. The settle-

ment, or a judgment rendered upon a stipulation of such a settlement, becomes presumptive evidence only of the liability of the insured and the amount thereof, which presumption is subject to being overcome by proof on the part of the insurer.''

Instructions 14 and 15 are claimed to be erroneous in permitting the jury to find that there may have been a waiver on the part of Maryland Casualty Company by its conduct. However, there is evidence in the record to support a finding of a waiver by a denial of liability under the policy.

Lastly, appellant complains that instruction 16 is in error. It is appellant's contention that the mere fact of denial does not of itself excuse the insured from complying with the conditions precedent of the policy, but that the denial of coverage must be wrongful. However, in instruction 3 the court instructed as follows:

"4. Did Defendant wrongfully deny liability under its contract and refuse to defend Plaintiffs against the claims of Imperial Feeds, Inc.

"If you find it did not, then you will return a verdict for Defendant. But if you find that it did, you then will proceed to fix the amount of Plaintiffs' damages and return a verdict in their favor.''

The instructions, when considered in their entirety, in our opinion adequately and fairly informed the jury as to the law applicable in the case and are not prejudicially erroneous in any particular.

Judgment affirmed.

Shepard, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 16, 1959.