[Civ. No. 26082. First Dist., Div. One. Mar. 31, 1970.]

NORTHWESTERN TITLE SECURITY COMPANY,
Plaintiff and Respondent, v.
ALLAN BOUD FLACK, Defendant and Appellant.

138

COUNSEL

Peter Hunt, John J. Bartko and Burd, Hunt & Friedman for Defendant and Appellant.

Miller, Starr & Regalia and Edmund L. Regalia for Plaintiff and Respondent.

OPINION

**MOLINARI, J.**—Defendant appeals from a judgment entered in favor of plaintiff for $8,613.55 arising out of a claim on a professional errors and omissions insurance policy issued by defendant as the representative of Underwriters At Lloyds, London, to plaintiff title insurance company.

Around mid-1964 Albert and Melanie Arens, who were purchasing a parcel of land from certain parties named Goff for the purpose of subdividing it and building homes thereon, employed plaintiff to provide them with a preliminary title report. On September 23, 1964, plaintiff issued such a report reflecting the existence of an easement against the property for ingress and egress. The report failed to list certain recorded limitations upon the easement restricting its use to ingress and egress for one dwelling only.

Plaintiff first became aware of this omission in late 1964 or early 1965. From that time until February 1965 plaintiff attempted to remedy the problem occasioned by the defective report by seeking to purchase additional easement rights through negotiations with the Goffs. These negotiations proving unsuccessful, plaintiff, with the concurrence of the Arenses, authorized its attorney to institute a declaratory relief action upon behalf of the Arenses against the Goffs.. This action did not proceed beyond the initial pleadings. The Arenses became dissatisfied and, on August 20, 1965, instituted an action against plaintiff for damages allegedly incurred as a proximtae result of the erroneous title report.

On December 30, 1965, plaintiff gave defendant notice of the Arens claim. Defendant investigated the claim in March 1966 and on June 1, 1966 rejected the claim in writing on the ground that the notice given by plaintiff was sufficiently late to constitute a material breach of the conditions of the certificate of insurance. Plaintiff, following the rejection notice, proceeded to prepare the declaratory relief action for trial and to vigorously pursue settlement negotiations.

On November 8, 1966, plaintiff's counsel telephoned a Mr. Winiker, who was defendant's representative in San Francisco, and advised him that

the Arens matter could be settled for a sum between $3,000 and $5,000. Although still denying liability on behalf of his principal, Winiker stated that he believed the proposed settlement to be reasonable. The case was thereafter settled for $5,500. Plaintiff sought reimbursement from defendant for the amount paid in settlement. When defendant declined payment the instant action ensued, and a judgment was entered in favor of plaintiff and against defendant for $8,613.55. The sum represents the amount paid the Arenses in settlement, together with attorney fees, costs and interest.

Defendant challenges the judgment essentially on the grounds that plaintiff's 13 months' delay in notifying defendant of the Arens claim was prejudicial as a matter of law, and therefore constituted a material breach of the indemnity contract; that plaintiff did not establish a provable loss against defendant; that in any event, even if a loss was established, the trial court applied the wrong measure of damages.

Adverting to the first assertion of error with respect to the timeliness of notice we note, initially, that both parties rely on *Campbell* v. *Allstate Ins. Co.*, 60 Cal.2d 303 [32 Cal.Rptr. 827, 384 P.2d 155]. That case held that although an insurer may assert defenses based upon a breach by the insured of a condition of the policy such as a cooperation clause, still the breach cannot be a valid defense unless the insurer was substantially prejudiced thereby. (P. 305.) *Campbell* holds, further, that the burden of proving that the breach of the condition was prejudicial is on the insurer. (P. 306.) (See also *Billington* v. *Interinsurance Exchange of Southern Cal.*, 71 Cal.2d 728, 737 [79 Cal.Rptr. 326, 456 P.2d 982].)

*Campbell* discusses two cases strongly relied upon by defendant. These cases are *Valladao* v. *Fireman's Fund Indem. Co.*, 13 Cal.2d 322 [89 P.2d 643], and *Purefoy* v. *Pacific Auto. Indem. Exchange*, 5 Cal.2d 81 [53 P.2d 155]. *Purefoy* held that prejudice must be presumed from the failure of the assured therein to notify the insurer of the accident for the period of a year and three months, although the assured had learned of the accident from the injured person three and one-half months thereafter. Such conduct precluded prompt investigation of the accident. (Pp. 87-88.) Similarly, in *Valladao*, the assured wilfully misrepresented for about five months that he was not driving the truck in question at the time of the accident, during which time the insurer had taken a formal position as to the facts from which it could not recede without great disadvantage. The court held that as a matter of law prejudice must be presumed from

a violation of the cooperation clause under these circumstances because prejudice naturally, inherently and necessarily existed. (Pp. 333-334.)

In *Campbell* the Supreme Court did not acknowledge that either *Purefoy* or *Valladao* held that prejudice must be presumed as a matter of law from the breach of a cooperation clause. Contrawise it ruled that a judicially created presumption of prejudice, whether conclusive or rebuttable, is unwarranted. (P. 307.) *Campbell* does hold, however, that neither *Purefoy* nor *Valladao* is contrary to the views expressed in *Campbell* but that these cases hold that under the facts there proved prejudice was established and that therefore a showing of prejudice was not required in those cases. (P. 306.)

In *Hanover Ins. Co.* v. *Carroll,* 241 Cal.App.2d 558 [50 Cal.Rptr. 704], we were called upon to reconcile *Campbell* with *Purefoy* insofar as delay in furnishing notice of the loss or claim is concerned. We concluded that the issue of prejudice with respect to delay is one of fact and that prejudice could not be found from the mere fact of delay.[1] (See *Abrams* v. *American Fid. & Cas. Co.,* 32 Cal.2d 233, 238-239 [195 P.2d 797].) Accordingly, in the light of *Campbell* and *Hanover* we perceive the rule to be that, although under some factual circumstances prejudice can exist as a matter of law, such prejudice does not exist as a matter of law merely from the fact of delay alone nor can any presumption or inference of prejudice be drawn from the mere fact of delay.

██ ██ In view of the foregoing we apprehend that *Campbell* stands for these propositions: (1) that breach by an insured of a cooperation or notice clause may not be asserted by an insurer unless the insurer was substantially prejudiced thereby; (2) that prejudice is not presumed as a matter of law from such breach; (3) that the burden of proving prejudicial breach is on the insurer; and (4) that, although the issue of prejudice is ordinarily one of fact, it may be established as a matter of law by the facts proved. (See *Allstate Ins. Co.* v. *King,* 252 Cal.App.2d 698, 706-707 [60 Cal.Rptr. 892].)

██ With respect to the insurer's burden of establishing substantial prejudice from the breach of a cooperation or notice clause, the holding in *Campbell* has been interpreted to mean that such burden is not carried by a showing of possibility of prejudice to the insurer. Rather, actual prejudice must be shown. (*Billington* v. *Interinsurance Exchange of Southern Cal., supra,* 71 Cal.2d 728, 737.) The insurer "must establish at the very least that if the cooperation clause had not been breached there

---

[1]In *Hanover,* a petition for hearing was denied by the Supreme Court.

was a substantial likelihood the trier of fact would have found in the insured's favor." (*Billington* v. *Interinsurance Exchange of Southern Cal., supra,* at p. 737.)

Returning to defendant's first assertion of error, we observe that the gravamen of his argument is that four factors of uncontradicted evidence establish prejudice as a matter of law, to wit: (1) That plaintiff, by filing the declaratory relief action on behalf of the Arenses against the Goffs, admitted liability for its error, thereby binding defendant; (2) prompt investigation was precluded by the delay in giving notice; (3) defendant was denied the opportunity to settle the Arens claim for a small sum early in the proceedings; and (4) defendant was denied the right of having his own counsel represent him at the early stages of the Arenses' asserted claim.

 Adverting to the first factor, we observe that the record does not affirmatively show that plaintiff admitted liability to the Arenses for its mistake, but rather shows that the action was filed for the purpose of obtaining an interpretation of the easement provision in the manner in which the Arenses were asserting it should be interpreted. This action did not proceed beyond the initial pleadings and hence no declaration of rights was made. Assuming, however, that, as contended by defendant, the filing of this action constituted an admission by plaintiff that it owed an obligation to the Arenses and that it thus acknowledged an actionable wrong, this circumstance does not, under the rationale of *Campbell* and *Hanover,* compel the conclusion that defendant was thereby prejudiced as a matter of law. If the filing of the subject declaratory relief action be deemed a breach of the cooperation clause it was still incumbent upon defendant to show that had plaintiff not filed the declaratory relief action still, as held in *Billington,* there was a substantial likelihood that defendant would have prevailed in a negligence action brought by the Arenses against plaintiff for the alleged error and omission. This determination was a factual one. We observe here, moreover, that in the instant case defendant stipulated, with respect to the Arens claim, that plaintiff's conduct in failing to show in its report the limitation on the easement was a negligent act committed by plaintiff in or about the conduct of its regular business within the meaning of the certificate of insurance issued by defendant to plaintiff.

 With respect to the last three factors, since each is pred⠂⠄ ⠄⠂ ⠄ ⠄⠄⠂ the mere fact of delay, it is clear that, under the holding and rationale in *Campbell* and *Hanover,* these facts, even though undisputed, do not show prejudice as a matter of law. In these cases it was held that prejudice does not arise merely because a delayed or late notice has denied the

insurance company the ability to contemporaneously investigate the claim or interview witnesses. Under the rationale enunciated by those cases the same rule applies to the denial of the opportunity to make an early settlement of the claim. ▮▮ Again, as pointed out in *Billington,* the burden was upon defendant to show that, but for the delay in making a prompt investigation and in hiring his own attorney at the early stages, there was a substantial likelihood that he could have prevailed in a negligence action brought against his assured or that he could have settled the case for a small sum or a smaller sum than that for which his insured ultimately settled the claim.

The issue of late notice in the instant case was one of fact for resolution by the trial court. The burden of proving that the giving of late notice resulted in prejudice was on defendant. Since his entire defense was based essentially on the fact of delay, he has not met that burden. On the record defendant has demonstrated a possibility of prejudice because of the late notice. He has not, however, shown any *actual* prejudice. In sum, he presented no evidence showing that were it not for the late notice he could have prevailed against the Arens claim or that he could have settled it for a sum less than that for which the claim was settled by plaintiff. Instead he predicated his entire defense on the assertion that the delay and the alleged admission of liability constituted prejudice as a matter of law.

▮▮▮▮ Defendant makes the policy argument that we should enunciate a strict rule of construction as regards the fulfillment of conditions precedent to indemnity found in claims-type policies. He argues that the cases which hold that an insurer may assert defenses based upon a breach by the insured of a policy condition only where the insurer was substantially prejudiced thereby, have been enunciated in "occurrence-type" policies where the obligation of the insurer is fixed in time by reference to the happening of an occurrence occasioning loss, such as an automobile accident. In the "occurrence-type" cases, argues defendant, the damages are fixed once the event has happened. Thus, since there is little danger of an expansion of the liability, the need for prompt notification is reduced. Defendant contends that, irrespective of the date of the insured's tort and the date of loss in a "claims-type" policy insuring against claims for errors and omissions, the obligation of the insurer dates in point of time from the time when the third party claim is made against the insured. Accordingly, defendant argues that in a "claims-type" policy the possibility of prejudice resulting from late notice is greater than in "occurrence-type" policies. In considering this argument we observe that, notwithstanding the generic differences between the two types of policies, there is no indication in *Campbell* or the other cases cited above that a different

rule can apply in "claims-type" policies. The cases make it clear that the subject rule applies to all cases in which the insurer asserts a defense based upon a breach by the insured of a cooperation or notice clause. As discussed above, the crucial question in each instance is not the possibility of prejudice but rather whether there was actual prejudice to the insurer. Therefore, the basic inquiry in each case is directed to the factual evidence tending to establish prejudice or non-prejudice. In would seem, moreover, that an insurer would more likely be able to produce evidence of prejudice because of delay in a "claims-type" case than he would in an "occurrence-type" case, since in the former the span of time between the commission of the tort and the notice of claim to the insured is longer.

■■ Defendant asserts that the Arens claim against plaintiff was never adjudicated and that therefore they did not have a loss provable against plaintiff. Alternatively, defendant asserts that if there was a loss provable against plaintiff the trial court applied the wrong measure of damages. The gist of defendant's contention appears to be that the record does not disclose that the Arenses suffered any loss or that there is any basis for paying them any money.

Adverting to the record we observe that the action brought by the Arenses against plaintiff prayed for $23,000. This was the purchase price of the acreage which was subject to the easement in question. Following the rejection by defendant of the Arens claim, this case was settled for $5,500. We note, further, that in the instant proceeding defendant stipulated that plaintiff's conduct in failing to show in its report the limitation on the easement was a negligent act committed by plaintiff and for which defendant would be liable under the policy. Accordingly, defendant concedes that the Arenses had a cause of action against plaintiff. The inquiry, then, is whether they are liable for the sum which plaintiff paid the Arenses in settlement of the claim. No citation of authority is necessary for the proposition that if defendant's rejection of the claim was unwarranted, as we hold it was, then defendant would be liable to plaintiff for the amount plaintiff was required to pay to the Arenses for the damages sustained by them as a proximate result of plaintiff's negligence.

■ The thrust of defendant's argument is that the proper measure of damages was the difference between what the Arenses paid for the real property and what it was in fact worth when they bought it, i.e., the difference between what plaintiff paid for the real property and what he received by way of value. Accordingly, it argues that since this differential was not established, no loss was proved. In making this argument defendant appears to be relying on the "out-of-pocket" measure of

damages provided for in section 3343 of the Civil Code[2] which is generally applied in cases involving vendor-vendee fraud. (See *Bagdasarian* v. *Gragnon,* 31 Cal.2d 744, 759, 762 [192 P.2d 935]; *Garrett* v. *Perry,* 53 Cal.2d 178, 183 [346 P.2d 758].)[3] In his closing brief, however, defendant asserts that section 3333 is the statutory expression of the proper measure of damages. In making this assertion he concurs with the position taken by plaintiff as to the proper measure of damages. Section 3333 provides that "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for the detriment proximately caused thereby, whether it could have been anticipated or not."

In our opinion the statutory expression of the proper measure of damages is found in section 3300 which provides for the same measure of damages as section 3333 but applies to "the breach of an obligation *arising from contract.*" Here, plaintiff's obligation to the Arenses arose from the preliminary title report. As observed in *J. H. Trisdale, Inc.* v. *Shasta County Title Co.,* 146 Cal.App.2d 831, 837 [304 P.2d 832], "It is generally accepted that an abstracter's obligation in preparing an abstract of title, such as the preliminary title report here in question, is contractual, and that liability will result, on the theory of breach of contract, for damages resulting from negligence in the preparation of the title report." (See *Viotti* v. *Giomi,* 230 Cal.App.2d 730, 739 [41 Cal.Rptr. 345].) Where such a breach occurs the abstracter is liable for the damages caused by its negligence. (*Viotti* v. *Giomi, supra,* at p. 740; *Overholtzer* v. *Northern Counties Title Ins. Co.,* 116 Cal.App.2d 113, 122 [253 P.2d 116]; see *Ruth* v. *Lytton Sav. & Loan Assn.,* 266 Cal.App.2d 831, 845 [72 Cal.Rptr. 521], mod. 272 Cal.App.2d 24, 26 [76 Cal.Rptr. 926].) In *Viotti,* it was held that a title company was responsible only for damages proximately caused by its negligence in failing to disclose a homestead in a litigation report. In *Ruth,* it was held that such damages include reasonable attorney's fees proximately incurred as a result of such negligence. (See *Prentice* v.

---

[2]Unless otherwise indicated, all statutory references hereinafter made are to the Civil Code.

[3]This rule does not apply where a fiduciary relationship exists between the fraudulent and the defrauded parties. In such cases the much broader provisions of section 3333 are applicable. (*Twomey* v. *Mitchum, Jones & Templeton, Inc.,* 262 Cal.App.2d 690, 713 [69 Cal.Rptr. 222]; *Walsh* v. *Hooker & Fay,* 212 Cal.App.2d 450, 458 [28 Cal.Rptr. 16]; *Simone* v. *McKee,* 142 Cal.App.2d 307, 315 [298 P.2d 667]; *Boyd* v. *Bevilacqua,* 247 Cal.App.2d 272, 294-295 [56 Cal.Rptr. 610].) Plaintiff contends that it was in a fiduciary relationship with the Arenses and that, therefore, the "out-of-pocket" rule is not applicable. We here point out that we need not concern ourselves as to whether plaintiff was a fiduciary since the liability as between plaintiff and the Arenses was not-predicated upon fraud but rather upon plaintiff's negligence.

*North American Title Guar. Corp.*, 59 Cal.2d 618, 621 [30 Cal.Rptr. 821, 381 P.2d 645].)

▮ With respect to an abstractor's liability in preparing a report such as that issued by plaintiff in this case, we note, moreover, that it is now the accepted rule that recovery may be sought either in contract or tort. (*Viotti* v. *Giomi, supra,* 230 Cal.App.2d 730, 739; *Hawkins* v. *Oakland Title Ins. Guar. Co.,* 165 Cal.App.2d 116, 125-126 [331 P.2d 742]; see Rest., Torts, § 552; and see *Gagne* v. *Bertran,* 43 Cal.2d 481, 490 [275 P.2d 15].) In any event, it is clear from a reading of sections 3300 and 3333 that the measure of damages for breach of contract prescribed in section 3300 is substantially identical to that for torts prescribed in section 3333. (See *Ruzanoff* v. *Retailers Credit Assn.,* 97 Cal.App. 682, 687 [276 P. 156].) ▮ Therefore, whether based in contract or tort, it is clear that where a defendant's undertaking is limited to exercising due care in making a report such as that in the instant case, the damages proximately resulting from a failure to exercise such care must be measured by the actual loss suffered. (*Gagne* v. *Bertran, supra; Viotti* v. *Giomi, supra,* at p. 740.)

▮ In the instant case it is clear that the Arenses suffered a loss as a result of plaintiff's negligence. The record discloses that the Arenses had purchased the property for purposes of subdivision and the construction of four dwellings on the property. That intention was frustrated because the record easement providing access into the acreage restricted its use to ingress and egress for one dwelling only. This was clearly a compensable claim under the policy and was admitted to be such by defendant. Our remaining inquiry, therefore, is whether the amount paid by plaintiff in settlement of the Arens claim was a "detriment proximately caused" by plaintiff's breach.

▮ An insurer who defaults in its agreement to defend the insured is bound to reimburse the insured for the full amount of any obligation reasonably incurred. (*Gray* v. *Zurich Ins. Co.,* 65 Cal.2d 263, 280 [54 Cal.Rptr. 104, 419 P.2d 168]; *Arenson* v. *National Auto. & Cas. Ins. Co.,* 48 Cal.2d 528, 539 [310 P.2d 961]; *Kershaw* v. *Maryland Cas. Co.,* 172 Cal.App.2d 248, 256-257 [342 P.2d 72].) As stated in *Kershaw,* the insured in such a case has the right to make any reasonable and bona fide compromise of the action against him and the settlement entered thereon is presumptive evidence of the liability of the insured and the amount thereof. (Pp. 256-257; see also *Ritchie* v. *Anchor Cas. Co.,* 135 Cal.App.2d 245, 258 [286 P.2d 1000]; *Lamb* v. *Belt Cas. Co.,* 3 Cal.App.2d 624, 630 [40 P.2d 311].) ▮ Here plaintiff was confronted with an action which prayed for $23,000 in damages. There was testimony that even

though the prayer was for this amount the attorney for the Arenses had indicated to plaintiff's attorney that he had "appraisal tesimony" that would show that the Arenses had been damaged to the extent of $30,000. Plaintiff's counsel testified that he took into account this claim as against his opinion that the damages would amount to at least $5,300, a figure which he obtained upon consultation with an appraiser, his client, and a real estate broker. Additionally, there is the testimony that Winiker, defendant's representative, stated that although his principal disclaimed liability, in his opinion, as an individual, a settlement between $3,000 and $5,000 was reasonable.[4] In view of this evidence and all the circumstances, it does not appear that the amount of the settlement in the sum of $5,500 was unreasonable.

Defendant's final assignment of error attacks the validity of finding X. In that finding the trial court found that prior to entering into the settlement, defendant's representative, although still disclaiming liability, had agreed with plaintiff's counsel that $5,000 was a reasonable amount to settle the Arens claim.[5] This finding obviously has reference to the conversation between plaintiff's counsel and defendant's representative, Winiker, hereinabove referred to. As already discussed, Winiker had stated that the settlement appeared reasonable to him as an individual. The record discloses that he made it clear that in expressing an opinion as to reasonableness he was not speaking as a representative of defendant. On the contrary, Winiker stated that his principal's position was that there was no coverage.

The subject finding enjoys no support in the record insofar as it purports to state that defendant agreed that the proposed settlement was reasonable. We do not apprehend, however, from the trial court's findings and its conclusions of law that liability was imposed upon defendant on the basis of any estoppel or accord and satisfaction. They make it clear that liability was imposed on the basis that the insurance coverage applied because defendant was not prejudiced by late notice and, therefore, that defendant was liable for the amount paid in settlement because of defendant's refusal to undertake the defense against plaintiff's claim. The questioned finding appears, moreover, to consist of probative rather than ultimate facts. In any event, the challenged finding is not necessary to support the judgment. It is, therefore, immaterial and may be regarded as surplusage. (*Baglione*

---

[4]This testimony was received without objection.

[5]Finding X reads as follows: "Shortly prior to entering into said settlement, plaintiff, through his counsel, communicated with the representative of the defendants that the matter probably could be settled for a sum approximating $5,000, and the defendants, through their representative, agreed that said sum was a reasonable settlement, although defendants still denied liability under said certificate of insurance."

v. *Leué,* 160 Cal.App.2d 731, 733-734 [325 P.2d 471]; *Alonso* v. *Hills,* 95 Cal.App.2d 778, 789 [214 P.2d 50]; *Switzer* v. *Yunt,* 5 Cal.App.2d 71, 80 [41 P.2d 974].)

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

A petition for a rehearing was denied April 22, 1970, and appellant's petition for a hearing by the Supreme Court was denied May 28, 1970.