134 F.3d 939
 21 Employee Benefits Cas. 2409, 98 Cal. Daily
Op. Serv. 958,
98 Daily Journal D.A.R. 597
Michelle CISNEROS, Plaintiff-Appellant,
v.
UNUM LIFE INSURANCE COMPANY OF AMERICA and 1 through 50,
Inclusive, Defendants-Appellees.
 No. 95-56179.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 9, 1997.
Opinion Decided May 30, 1997.
Opinion Withdrawn Jan. 20, 1998.
Decided Jan. 20, 1998.
 
 Jeffrey C. Metzger, Law Offices of Jeffrey C. Metzger, Laguna Hills, California, for plaintiff-appellant.
 Russell G. Petti (Argued), Bannan, Green, Smith & Frank, Los Angeles, California, and Margaret Levy and Allison B. Gruettner (On the Briefs), Adams, Duque & Hazeltine, Los Angeles, California, for defendants-appellees.
 Appeal from the United States District Court for the Southern District of California; Napoleon A. Jones, District Judge, Presiding. D.C. No. CV-95-00503-NAJ.
 Before: FLETCHER and TROTT, Circuit Judges, and JENKINS,* Senior District Judge.
 TROTT, Circuit Judge:
 
 ORDER
 
 1
 The Opinion filed May 30, 1997, and published at 115 F.3d 669 is ordered withdrawn.
 
 OPINION
 OVERVIEW
 
 2
 Michelle Cisneros brought this action to recover long-term disability benefits under an ERISA-governed insurance policy (the "Policy") issued by UNUM Life Insurance Company ("UNUM"). The district court entered summary judgment in favor of UNUM on the ground that Cisneros's proof-of-claim was untimely under the Policy terms. We agree with the district court's conclusion that Cisneros failed to comply with the Policy's unambiguous time-limits for submitting proof-of-claim. However, because we hold that UNUM is required under a California law regulating insurance to show actual prejudice from Cisneros's untimely submission of proof in order to deny payment, we reverse the judgment in favor of UNUM and remand the case for further proceedings.
 
 BACKGROUND
 
 3
 In 1988, Cisneros worked as an office manager at the Keenan Supply Company, a division of the Hajoca Corporation ("Hajoca"). On August 18, 1988, Cisneros suffered a work-related back injury. As a result of this injury, she has been continuously disabled since June 1992. In March 1994, Cisneros learned that Hajoca provided long-term disability insurance benefits under the Policy and mailed a benefit application to UNUM. Prior to this time, she allegedly was unaware that such benefits were available. UNUM acknowledged receipt of the claim on April 26, 1994, nearly two years after the onset of Cisneros's continuous disability.
 
 
 4
 UNUM denied Cisneros's claim because she had not complied with the proof-of-claim requirements in the Policy which, according to UNUM, required Cisneros to submit proof of her disability within one year and 180 days of the onset of her disability. Cisneros filed suit in California state court. UNUM removed the case to federal court and moved to dismiss for failure to state a claim. The district court treated the motion as one for summary judgment pursuant to Federal Rule of Civil Procedure 12(c) and entered summary judgment in favor of UNUM, ruling that Cisneros's application was untimely under the Policy terms.
 
 STANDARD OF REVIEW
 
 5
 We review a grant of summary judgment de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996). Whether ERISA preempts state law is a question of law, which we review de novo. Inland Empire Chapter of Assoc. Gen. Contractors v. Dear, 77 F.3d 296, 299 (9th Cir.1996). The district court's determination of whether the Policy language is ambiguous is reviewed de novo. See O'Neill v. United States, 50 F.3d 677, 682 (9th Cir.), cert. denied, 516 U.S. 1028, 116 S.Ct. 672, 133 L.Ed.2d 521 (1995). Finally, we review the district court's interpretation of the Policy language de novo.[1] Id.DISCUSSION
 
 I. The Policy's Proof-of-Claim Provisions
 
 6
 The district court concluded that the Policy's proof-of-claim provisions were unambiguous and that they required Cisneros to submit proof of her claim, at the latest, within one year and 180 days after the onset of her disability. We agree. Section VI.F. of the Policy states:
 
 2. Proof
 
 7
 a. Proof of claim must be given to the Company. This must be done no later than 90 days after the end of the elimination period.
 
 
 8
 b. If it is not possible to give proof within these time limits, it must be given as soon as reasonably possible. But proof of claim may not be given later than one year after the time proof is otherwise required.
 
 
 9
 (Emphasis added). The Policy defines the "elimination period" as the ninety-day period following the onset of the insured's disability.
 
 
 10
 As we interpret this language, section VI.F.2.a. of the Policy required Cisneros to submit proof of her disability to UNUM ninety days after the elimination period (i.e., 180 days after her disability began). If it was not reasonably possible for her to submit proof within this time frame, then section VI.F.2.b. of the Policy required Cisneros to submit proof of her disability, at the latest, one year later (i.e., a total of one year and 180 days after the onset of her disability).
 
 
 11
 We reject Cisneros's argument that this policy language is ambiguous. The language cannot reasonably be construed to mean that proof must be submitted whenever it is reasonably possible for the applicant to give proof. We also reject Cisneros's contention that the Policy failed to provide expressly for forfeiture of benefits in the event of untimely submission of proof. Section VI.F.2.b. provides that proof "may not be given " after one year and 180 days. Section VI.I. provides that benefits will be paid "[w]hen the company receives proof." (Emphasis added). Read together, these provisions logically and unambiguously establish that, under the Policy, timely submission of proof is a condition precedent to payment of benefits.[2]
 
 
 12
 Cisneros contends that it was not reasonably possible for her to submit proof until March 1994, nearly two years after her disability began, because that is when she learned of the Policy's existence. Even if we accept this contention as true, as we must, Cisneros still failed to comply with section VI.F.2.b., because she did not submit proof of her disability until well after the cutoff of one year and 180 days after the onset of disability. Therefore, the district court correctly concluded that Cisneros failed to comply with the Policy's proof-of-claim requirements, and that, under the language of the Policy, this failure could result in a forfeiture of benefits.
 
 
 13
 Directing our attention to Nikaido v. Centennial Life Insurance Co., 42 F.3d 557 (9th Cir.1994), however, Cisneros argues that the Policy's proof-of-claim provisions require proof after each monthly period of disability, and thus that each monthly period begins a new time limit for submitting proof. As a result, Cisneros argues, she is at least entitled to benefits for the period beginning one year and 180 days prior to the month when she did submit proof of loss.
 
 
 14
 In Nikaido, we considered whether an employee's claim for disability benefits was barred by the statute of limitations. The applicable statute of limitations was three years from the time proof of loss was due. The proof of loss provision in the contract adopted the terms of California Insurance Code section 10350.7 and required submission "within 90 days after the termination of the period for which the Company is liable." Id. at 560 (emphasis added). We interpreted the language "period for which the company is liable" to refer to each month of disability. Id. Thus, we held that proof was due after each month of continuing disability and that a new cause of action with a new three-year statute of limitations period also began each month. Id.
 
 
 15
 The Nikaido holding was based on the particular contract language at issue in that case. It simply does not apply to the proof-of-loss provision in the UNUM policy, which involves different language. The UNUM contract requires submission of proof within one year and 180 days of the onset of disability. Thereafter, "[p]roof of continued disability and regular attendance of a physician must be given to [UNUM] within 30 days of the request for proof." (Emphasis added). In other words, unlike the contract in Nikaido, the UNUM Policy language does not require the insured to submit proof for each period of continuing disability; it only requires the initial submission of proof and then requires the insured to provide further proof upon request.
 
 
 16
 Cisneros argues, however, that the proof-of-claim provision in the Policy contravenes California law and that the terms of California Insurance Code section 10350.7, as interpreted in Nikaido, must be read into the policy. Because Cisneros failed to raise this argument in the district court, the record is unclear as to whether the UNUM policy does in fact violate California law. See Cal. Ins.Code § 10350 (insurer may include substitute proof-of-loss language if approved by the commissioner). Accordingly, on remand, the district court shall consider the effect of section 10350.7, as interpreted in Nikaido. For this purpose, we direct the district court's attention to our related holding in Williams v. UNUM, 113 F.3d 1108, 1113-14 (9th Cir.1997).
 
 II. The Notice-Prejudice Rule
 
 17
 Under California law, Cisneros's failure to submit timely proof of her claim does not necessarily invalidate her claim to benefits. California's "notice-prejudice" rule prevents an insurance company from avoiding liability on the basis of untimely notice or submission of proof unless the company proves it has been substantially prejudiced by the delay. Shell Oil Co. v. Winterthur Swiss Ins. Co., 12 Cal.App.4th 715, 15 Cal.Rptr.2d 815, 845 (1993); see also Clemmer v. Hartford Ins. Co., 22 Cal.3d 865, 151 Cal.Rptr. 285, 293-95, 587 P.2d 1098, 1106-07 (1978) (en banc). Prejudice is not presumed from the delay alone, Shell Oil, 15 Cal.Rptr.2d at 845, and the insurer must show actual prejudice, not the mere possibility of prejudice, in order to avoid liability. Id.
 
 
 18
 UNUM argues that ERISA preempts the notice-prejudice rule in this case. As a general rule, ERISA supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).[3] ERISA's "saving clause," however, expressly exempts from preemption any state law "which regulates insurance." Id. § 1142(b)(2)(A). Because we conclude that the notice-prejudice rule falls within the saving clause, we hold that the notice-prejudice rule is exempt from preemption.
 
 
 19
 In Metropolitan Life Insurance Co. v. Massachusetts, 471 U.S. 724, 740-43, 105 S.Ct. 2380, 2389-91, 85 L.Ed.2d 728 (1985), the Supreme Court used an eclectic approach to decide whether a state law mandating minimum health care benefits "regulates insurance" within the meaning of the saving clause. First, the Court determined whether that law fit a common-sense understanding of insurance regulation. Id. at 740-42, 105 S.Ct. at 2389-91. Deciding that it did, the court then checked its conclusion against three criteria taken from case law interpreting the phrase "business of insurance" under the McCarran-Ferguson Act, 15 U.S.C. §§ 1011-15:
 
 
 20
 [F]irst, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry.
 
 
 21
 Id. at 743, 105 S.Ct. at 2391 (quoting Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119, 129, 102 S.Ct. 3002, 3008-09, 73 L.Ed.2d 647 (1982)). Using this approach, the Supreme Court held that the statute in question "regulates insurance" and thus is "saved" from ERISA preemption. Id. at 740-44, 105 S.Ct. at 2389-91.
 
 
 22
 In so doing, the court made four observations that inform our conclusion in this case.
 
 
 23
 First, ERISA's "two preemptive sections, while clear enough on their faces are not a model of legislative drafting, for while the general pre-emption clause broadly pre-empts state law, the saving clause appears broadly to preserve the states' lawmaking power over much of the same regulation." Id. at 739-40, 105 S.Ct. at 2389. (emphasis added).
 
 
 24
 Second, the court "presume[d] that Congress did not intend to pre-empt areas of traditional state regulation." Id. at 740, 105 S.Ct. at 2389. Here we note that at least twenty-five states currently follow some variation of the notice-prejudice rule, demonstrating its widespread acceptance. Barry R. Ostrafer & Thomas R. Newman, Handbook on Insurance Coverage Disputes § 4.02(b)(5) (8th ed.1995) (citing cases).
 
 
 25
 Third, the court said, "Nor is there any contrary case authority suggesting that laws regulating the terms of insurance contracts should not be understood as laws that regulate insurance." Id. at 744, 105 S.Ct. at 2391.
 
 
 26
 Finally, the court was fully aware of the lack of uniformity its holding would produce:
 
 
 27
 We are aware that our decision results in a distinction between insured and uninsured plans, leaving the former open to indirect regulation while the latter are not. By so doing we merely give life to a distinction created by Congress in the "deemer clause," a distinction Congress is aware of and one it has chosen not to alter. We also are aware that appellants' construction of the statute would eliminate some of the disuniformities currently facing national plans that enter into local markets to purchase insurance. Such disuniformities, however, are the inevitable result of the congressional decision to "save" local insurance regulation. Arguments as to the wisdom of these policy choices must be directed at Congress.
 
 
 28
 Application of the Metropolitan Life approach to Cisneros' case compels us to conclude that the notice-prejudice rule is a law which "regulates insurance" and thus falls within the saving clause. First, by requiring the insurer to prove prejudice before enforcing proof-of-claim requirements, the notice-prejudice rule dictates the terms of the relationship between the insurer and insured and so seems, as a matter of common sense, to "regulate insurance." The rule is directed specifically at the insurance industry and is applicable only to insurance contracts. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 50, 107 S.Ct. 1549, 1554, 95 L.Ed.2d 39 (1987) ("A common-sense view of the word 'regulates' would lead to the conclusion that in order to regulate insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry.").
 
 
 29
 Our conclusion holds up when measured against the McCarran-Ferguson factors. Although the notice-prejudice rule may not have the effect of transferring or spreading the policyholder's risk, we believe this imperfection is not dispositive. The Supreme Court has explained that the term "risk"-as used in this factor-refers to the risk of injury for which the insurance company contractually agreed to compensate the insured. Union Labor Life, 458 U.S. at 130, 102 S.Ct. at 3009. The notice-prejudice rule does shift the risk of lost coverage as a result of late submission of proof, but it does not alter the allocation of risk for which the parties initially contracted, namely the risk of lost income from long-term disability. In this regard, the notice-prejudice rule is different from the Massachusetts mandatory benefits law at issue in Metropolitan Life. That law altered the substantive scope of coverage that Massachusetts insurance companies contractually were obligated to provide. Thus, unlike the statute in Metropolitan Life, the notice-prejudice rule does not spread the policyholder's risk within the meaning of the first McCarran-Ferguson factor. See Smith v. Jefferson Pilot Life Ins. Co., 14 F.3d 562, 569 n. 9 (11th Cir.1994) ("[A]lthough a statute that prevents cancellation of a policy without notice arguably affects the transfer of risk, since it regulates the conditions under which the insurer must continue to bear risks for the insured, it does not alter the initial apportionment of risk among the parties at the inception of the contract."); Tingle v. Pacific Mut. Ins. Co., 996 F.2d 105, 108 (5th Cir.1993) ("Although the statute [which bars recovery for misrepresentations on an insurance application only where there was an intent to deceive] does shift the burden of innocent misrepresentations (the legal risks) onto the insurer, it does not spread the risk of insurance (health) coverage for which the parties contracted.").
 
 
 30
 Nevertheless, the other two McCarran-Ferguson factors weigh heavily in favor of the conclusion that the notice-prejudice rule "regulates insurance." By requiring the insurer to prove prejudice before enforcing proof-of-claim requirements, the notice-prejudice rule effectively creates a mandatory contract term. The rule dictates the terms of the relationship between the insurer and the insured, and consequently, is integral to that relationship. See Metropolitan Life, 471 U.S. at 740, 105 S.Ct. at 2389.
 
 
 31
 The third McCarran-Ferguson factor also is satisfied because the notice-prejudice rule applies only to the insurance industry. See id. Thus, two of the three McCarran-Ferguson factors strongly support the conclusion that the notice-prejudice rule "regulates insurance" within the meaning of ERISA's saving clause.
 
 
 32
 We recognize that the Fifth Circuit has held that all three of the McCarran-Ferguson factors must be satisfied for a law to "regulate insurance." CIGNA Healthplan of La., Inc. v. State of La., 82 F.3d 642, 650 (5th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 387, 136 L.Ed.2d 304; Tingle, 996 F.2d at 108. We respectfully disagree. From our interpretation of Metropolitan Life and Pilot Life, we conclude that the McCarran-Ferguson factors are simply relevant considerations or guideposts, not separate essential elements of a three-part test that must each be satisfied for a law to escape preemption. See Metropolitan Life, 471 U.S. at 743, 105 S.Ct. at 2391 (describing the McCarran-Ferguson factors only as "relevant" criteria); Pilot Life, 481 U.S. at 48, 107 S.Ct. at 1553 (describing the McCarran-Ferguson factors as considerations to be weighed). Indeed, in cases interpreting the McCarran-Ferguson Act-from which the factors were born-the Supreme Court has explicitly noted that "none of [the McCarran-Ferguson factors] is necessarily determinative." Union Labor Life, 458 U.S. at 129, 102 S.Ct. at 3009. In this case, the McCarran-Ferguson factors, on balance, weigh in favor of the conclusion that the notice-prejudice rule "regulates insurance."
 
 
 33
 Given Met Life's approach, we can find no sense in concluding that this particular state law does not regulate insurance when it so clearly does. If California's rule does not regulate insurance, what does it regulate? A rote application of the risk spreading factor would work unreasoned mischief against the broad purpose of the saving clause, eliminating California's notice-prejudice insurance rule from its reach. We fail to discern much difference on one hand between forcing minimum health care benefits into contracts that do not contain them and subjecting contracts to a notice-prejudice rule on the other-that is, if the question is whether one regulates insurance and the other does not. We find unconvincing the idea that Congress and ERISA would save and thereby enforce a state law mandating insurance companies to provide specified coverage whether purchased by the insured or not, yet pre-empt and thereby nullify a state law requiring an insurer to show actual prejudice from late notice before it refuses to pay benefits purchased by the insured. In this respect, the proof of the pudding's recipe is in the eating.
 
 
 34
 Because we conclude that both common sense and the McCarran-Ferguson factors strongly support on balance the conclusion that California's notice-prejudice rule "regulates insurance," we hold that the rule escapes ERISA preemption and applies to Cisneros's claim of its own force.
 
 
 35
 We are fully cognizant of the complications and extra burdens that the notice-prejudice rule imposes on insurers. UNUM forcefully brings these to our attention. In this limited respect, a plan's written terms are altered. Moreover, the notice-prejudice rule is more difficult to administer and provides less predictability than does the calendar. All of this, of course, may generate additional litigation. UNUM's concerns are real-but that does not alter the scope of the saving clause written into the law by Congress or the validity of the notice-prejudice rule adopted in California. Moreover, we presume that insurers structure their premiums and conduct their financial affairs around the principle that they may have to honor and pay for the coverage provided.
 
 III. Federal Common Law
 
 36
 This holding, however, does not end our task, for Cisneros also urges us to adopt the notice-prejudice rule as a rule of federal common law. ERISA directs us "to formulate a nationally uniform federal common law to supplement the explicit provisions and general policies set out in ERISA, referring to and guided by principles of state law when appropriate, but governed by the federal policies at issue." Menhorn v. Firestone Tire & Rubber Co., 738 F.2d 1496, 1500 (9th Cir.1984). We decline this invitation.
 
 
 37
 It would appear that the federal common law we are directed to formulate must follow from preemption, not from a conclusion that the law is saved from preemption. See Misic v. Building Serv. Empl. Health, 789 F.2d 1374, 1377 (9th Cir.1986). Otherwise, laws from different states dealing with the same subject but with different results would end up in irreconcilable conflict with each other. For example, it has been brought to our attention that some States' notice-prejudice rules differ markedly from California's, some States presuming that the insurer has been prejudiced by late notice. See Reid v. Conn. Gen. Life Ins. Co., 17 F.3d 1092, 1098 n. 3 (8th Cir.1994). If California's notice-prejudice rule requiring the insurer to prove actual prejudice is saved from preemption, then so would the other States' rules-but those rules would be inconsistent with any California inspired federal common law we might adopt. Moreover, which state law would prevail would depend only on which came first to the courthouse in this context. Such a result is patently untenable.
 
 IV. Proof of Actual Prejudice
 
 38
 Because we hold that, as a matter of California law, UNUM is required to prove actual prejudice as a result of Cisneros's delayed submission of proof, we reverse the district court's grant of summary judgment in favor of UNUM. There is a genuine issue of material fact as to whether UNUM suffered actual prejudice by virtue of the untimeliness. See Select Ins. Co. v. Superior Court, 226 Cal.App.3d 631, 276 Cal.Rptr. 598, 602 (1990) (question of prejudice is one of fact).
 
 
 39
 UNUM argues on appeal that it did suffer prejudice because it was denied the opportunity to conduct a contemporaneous medical evaluation. But "prejudice does not arise merely because a delayed or late notice has denied the insurance company the ability to contemporaneously investigate the claim or interview witnesses." Shell Oil Co., 15 Cal.Rptr.2d at 845 (quoting Northwestern Title Sec. Co. v. Flack, 6 Cal.App.3d 134, 85 Cal.Rptr. 693, 697 (1970)). UNUM must show that it has suffered actual prejudice, not that there is a mere possibility of prejudice.
 
 
 40
 Because the plan administrator and the district court both believed that the notice-prejudice rule did not apply to Cisneros's claim, neither the plan administrator nor the district court determined whether UNUM suffered prejudice. Accordingly, we remand the case to the district court with instructions to remand to the plan administrator for a factual determination as to whether UNUM suffered actual prejudice by virtue of the untimely submission of proof. See Patterson v. Hughes Aircraft Co., 11 F.3d 948, 951 (9th Cir.1993).[4]
 
 CONCLUSION
 
 41
 We agree with the district court's conclusion that Cisneros failed to comply with the Policy's unambiguous requirement that the insured submit proof of claim within one year and 180 days following the onset of disability. However, we hold that California's notice-prejudice rule applies to Cisneros's claim as a law that "regulates insurance" and is therefore saved from ERISA preemption. As a result, a genuine issue of material fact exists as to whether UNUM suffered actual prejudice from Cisneros's untimely submission of proof. Accordingly, we reverse the judgment of the district court and remand the case with instructions to remand to the plan administrator for a finding as to actual prejudice and for further proceedings consistent with this opinion.
 
 
 42
 REVERSED and REMANDED.
 
 
 
 *
 The Honorable Bruce S. Jenkins, Senior District Judge for the District of Utah, sitting by designation
 
 
 [1]
 UNUM urges us to adopt the Fifth Circuit's holding in Pierre v. Connecticut Gen. Life Ins. Co./Life Ins. Co. of N. Am., 932 F.2d 1552 (5th Cir.1991), and to review the plan administrator's factual determinations regarding the timeliness of Cisneros's application under an abuse of discretion standard rather than a de novo standard. We decline to reach this issue, however, because no factual determinations are contested in this case
 
 
 [2]
 Cisneros's suggestion that Hajoca's failure to inform her of the availability of disability benefits is a "clerical error or omission," which, under the Policy, will not "deprive an employee of insurance," also is without merit. If this provision were intended to apply to a failure to submit proof of claim, then the Policy's proof-of-claim provisions would be meaningless
 
 
 [3]
 The Supreme Court recently has narrowed the scope of ERISA's "related to" language. New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655-57, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995) (finding no preemption of state surcharges imposed on patients covered by a commercial insurer, but not on those insured by Blue Cross/Blue Shield, because the surcharges have only an indirect economic effect upon employee benefit plans). Travelers reversed an expansive interpretation of "relate to" and concluded that:
 If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course.... But that, of course, would be to read Congress's words of limitation as mere sham and to read the presumption against pre-emption out of the law whenever Congress speaks to the matter with generality.
 Id. at 655, 115 S.Ct. at 1677.
 
 
 [4]
 We do not consider Cisneros's remaining claim on appeal that, because Hajoca allegedly is UNUM's agent under state law, Hajoca's failure to inform Cisneros of the availability of disability benefits should be imputed to UNUM and thereby prevent UNUM from relying on the untimeliness defense. Cisneros only made a passing reference to the idea that Hajoca is UNUM's agent in its opposition to UNUM's motion for summary judgment. It did not fully develop the argument that it now raises on appeal. Accordingly, we decline to review this claim. See A-1 Ambulance Serv. Inc. v. County of Monterey, 90 F.3d 333, 338 (9th Cir.1996)