**Charles WETZEL, Plaintiff–Appellant,**

v.

**LOU EHLERS CADILLAC GROUP LONG TERM DISABILITY INSURANCE PROGRAM; Reliance Standard Life Insurance Company, Defendants–Appellees.**

No. 97–56437

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 5, 1999.

Decided Sept. 7, 1999.

Ronald Dean, Pacific Palisades, California, for the plaintiff-appellant.

David A. Lingenbrink and Jennifer L. Kurzon, Galton & Helm, Los Angeles, California, for the defendants-appellees.

Before: JAMES R. BROWNING, CHARLES WIGGINS, and SUSAN P. GRABER, Circuit Judges.

Opinion by Judge WIGGINS; Dissent by Judge GRABER.

WIGGINS, Circuit Judge:

Charles Wetzel appeals from the district court's summary judgment in favor of Defendants in Wetzel's ERISA claim for long-term disability insurance benefits. The district court determined that Wetzel's claim was time-barred. In doing so, the district court fell prey to an ambiguity that resulted from our opinions in *Nikaido*

*v. Centennial Life Insurance Co.*, 42 F.3d 557 (9th Cir.1994) and *Williams v. UNUM Life Insurance Co. of America*, 113 F.3d 1108 (9th Cir.1997). The district court's order granting summary judgment in favor of Defendants is, therefore, reversed and the case is remanded to the district court. We publish today to resolve this ambiguity and find that the district court erred in determining the proper accrual date for Wetzel's claim.

**I**

Wetzel, as an employee of Lou Ehlers Cadillac, was a participant in the Lou Ehlers Cadillac Group Long Term Disability Insurance Program (the "Ehlers Plan"). The Ehlers Plan is an employee welfare benefit plan established by Lou Ehlers Cadillac for its employees. Reliance Standard Life Insurance Company ("Reliance") funded a long-term disability benefit (the "LTD Benefit") contained in the Ehlers Plan for the plan's participants.

The LTD Benefit was set out in its own separate policy (the "LTD Policy"). The LTD Policy provides monthly benefits to participants for periods during which they met the LTD Policy's definition of "total disability." The LTD Policy defined "total disability" during the first two years of a claim as an inability to perform the material duties of the participant's own occupation, and thereafter required the participant to be totally disabled from all occupations to continue receiving benefits. The LTD Policy limited claims relating to a mental disorder to a two-year benefit period unless the participant was confined in a hospital or institution.

Wetzel submitted a claim for long-term disability benefits to Reliance in August 1991, alleging that he was totally disabled as a result of stomach pain, diarrhea, headaches, hand tremors, and insomnia. Reliance began paying monthly benefits pursuant to the LTD Policy in March 1992, retroactive to July 1991.

By letter dated August 5, 1992, Reliance notified Wetzel that it viewed his claim as psychiatric in nature and that it would terminate his benefits after a two-year period because his disability was a result of a mental disorder. This letter initiated a series of correspondence between Wetzel (as well as his attorney) and Reliance concerning the termination of Wetzel's long-term disability benefits. Reliance discontinued Wetzel's benefits in August 1993, precipitating this law suit.

The district court concentrated on three letters from Reliance in determining when Wetzel's cause of action accrued. In the letter dated August 5, 1992,[1] Reliance informed Wetzel that because benefits were only payable for a maximum of twenty-four months if a disability resulted from a mental or nervous disorder, his benefits would terminate upon the completion of twenty-four months, on July 30, 1993. Reliance then informed Wetzel that, "[s]hould you disagree with this determination, we would be happy to review any additional information you wish to submit in support of your claim for continued benefits."

In its August 13, 1993 letter, Reliance reiterated its position that Wetzel's benefits were based upon a mental or nervous disorder, and so indicated that "no benefits will be paid beyond August 1, 1993." In its October 4, 1993 letter, Reliance again reiterated its position that "all of the medical information we have received indicates that the primary cause of [Wetzel's] disability is due to [his] mental/nervous condition" and, consequently, that "no additional benefits can be paid as a result of your claim."

After further correspondence, as well as assistance by the California Department of Insurance, Wetzel filed suit against Reliance and the Ehlers Plan on May 6, 1997. On July 3, 1997, Defendants filed a Motion for Summary Judgment on Statute of Limitations Grounds. The district court subsequently heard and then granted the Mo-

**1.** The district court's order granting Defendants' Motion for Summary Judgment mistak-enly refers to this letter as dated August 5, 1993.

tion. Wetzel now timely appeals from the resulting judgment in favor of Defendants.

## II

We must determine whether Wetzel's claim was barred by the statute of limitations. In resolving this issue, we hope to resolve an ambiguity that resulted from our *Nikaido* and *Williams* opinions. The district court, in attempting to navigate the shoals that resulted from this ambiguity, found that Wetzel's claim was time-barred and granted summary judgment in favor of Defendants. Although we understand the difficulty that the district court faced, we find that the district court erred in determining when Wetzel's claim accrued and the statute of limitations began to run. We therefore reverse the summary judgment.[2]

### A. Standard of Review

■ We review a district court's grant of summary judgment de novo. *See Robi v. Reed,* 173 F.3d 736, 739 (9th Cir.1999). "Viewing the evidence in the light most favorable to the nonmoving party, the appellate court determines whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.* The interpretation of ERISA is a question of law reviewed de novo. *See Babikian v. Paul Revere Life Insurance Co.,* 63 F.3d 837, 839 (9th Cir.1995).

### B. Jurisdiction

Wetzel brought his cause of action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001–1461 ("ERISA"). His action was brought under 29 U.S.C. § 1132(a) and the district court had jurisdiction under 29 U.S.C. § 1132(e). We have jurisdiction under 28 U.S.C. § 1291.

### C. Statute of Limitations

■ ERISA's statute of limitations provision, 29 U.S.C. § 1113, only applies to

cases involving an alleged breach of fiduciary duty, but not to claims against a plan for benefits. *See Nikaido,* 42 F.3d at 559 n. 1. Therefore, the federal courts look to the most closely analogous state statute of limitations to determine the appropriate limitations period for an ERISA cause of action based on a claim for benefits. *See id.* at 559 (citing *Flanagan v. Inland Empire Elec. Workers Pension Plan,* 3 F.3d 1246, 1251 (9th Cir.1993)). Federal law, however, "determines when a federal cause of action accrues, despite the fact that state law determines the relevant statute of limitations." *Williams,* 113 F.3d at 1111.

1. *Nikaido v. Centennial Life Insurance Co.:* the Rolling Accrual Rule

In *Nikaido,* this Court had to determine whether a disability plan participant's cause of action was time-barred. In doing so, the court determined that the three-year period provided for in California Insurance Code § 10350.11 ("Section 10350.11") is the applicable statute of limitations for an ERISA cause of action arising in California against a plan for benefits. *See Nikaido,* 42 F.3d at 559. Section 10350.11 is one of several Compulsory Standard Provisions that California requires to be included in "each disability policy delivered or issued for delivery to any person" in California. Cal. Insurance Code § 10350. California requires insurers either (1) to include the statutorily-mandated Compulsory Standard Provisions in their insurance policies; or (2) to substitute "different wording approved by the commissioner" that is not less favorable to the insured or the beneficiary. *Id.*

Section 10350.11 requires all disability policies to provide the following limitation on legal actions:

> No action at law or in equity shall be brought to recover on this policy ... after the expiration of three years *after the time written proof of loss is required to be furnished.*

---

2. Because of our resolution of this issue, we do not need to resolve any of the other issues

presented by Wetzel or by his amicus, the American Association of Retired Persons.

1164

Cal. Ins.Code § 10350.11 (emphasis added).

In *Nikaido*, this court determined that Section 10350.11's limitations provision "provides a closer analogy to this case than does the more general breach of contract provision" contained in California Code of Civil Procedure § 337. *Nikaido*, 42 F.3d at 559. In holding that Section 10350.11's limitation provision would govern the relevant ERISA causes of action, our court was forced to allow state law to determine when certain ERISA causes of action accrue-the time that written proof of loss is required to be furnished-because "the state statute that prescribes the limitation period *defines that period by reference to a specific accrual period." Id.* (emphasis added). The *Nikaido* court explained that its adoption of Section 10350.11's limitation provision would allow state law to determine when the ERISA cause of action accrues, "even though federal law determines when a cause of action under ERISA accrues." *Id.*

By accepting Section 10350.11's accrual date for purposes of determining when an ERISA cause of action accrues for statute of limitations purposes, the *Nikaido* court laid the groundwork for what has come to be known as the rolling accrual rule. Because Section 10350.11's limitations period is based upon when proof of loss was re-

quired to be furnished, the *Nikaido* court looked to the insurance plan to determine when proof of loss must have been furnished. The insurance plan at issue in *Nikaido* contained a "Proofs of Loss" section that provided that

> Written proof of loss must be furnished to the Company, in case of claim for loss for which this Policy provides a periodic payment contingent upon continuing loss, *within 90 days after the termination of the period for which the Company is liable.*

*Id.* at 559–60 (emphasis added). This proof of loss provision resulted from another Compulsory Standard Provision that California requires to be included in all disability insurance policies delivered or issued in California. *See* Cal. Ins.Code ·§ 10350.7.[3] The *Nikaido* court, therefore, had to "decide the meaning of the phrase 'the period for which the Company is liable,' " in order to determine when the plan participant's cause of action accrued. *See Nikaido*, 42 F.3d at 560. It was the court's construction of the term "period" that created the rolling accrual rule.

In order to determine the most reasonable construction of the proof of loss provision, the *Nikaido* court looked first to state court cases interpreting similar required provisions because substantially identical language is required in many if not most states.[4]

---

**3.** This Compulsory Standard Proof of Loss Provision requires that every disability policy delivered or issued for delivery to any person in California provide the following, unless alternative wording is approved by the California Insurance Commissioner:

> Written proof of loss must be furnished to the insurer ... in case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss *within 90 days after the termination of the period for which the insurer is liable* ....

Cal. Ins.Code § 10350.7 (emphasis added).

**4.** All of the other states in our circuit require similar proof of loss provisions. *See* Alaska Stat. § 21.51.100; Ariz.Rev.Stat. Ann. § 20–1351; Haw.Rev.Stat. § 431:10A–105(7); Idaho Code § 41–2111; Mont.Code Ann. § 33–22–210; Nev.Rev.Stat. § 689A.110; Or.Rev. Stat. § 743.429; Wash. Rev.Code

§ 48.20.102. All the other states in our Circuit also have statutorily-required limitation of action provisions similar to that required by Section 10350.11. *See* Alaska Stat. § 21.51.140; Ariz.Rev.Stat. Ann. § 20–1355; Haw.Rev.Stat. § 431:10A–105(11); Idaho Code § 41–2115; Mont.Code Ann. § 33–22–214; Nev.Rev.Stat. § 689A.150; Or.Rev.Stat. § 743.441; Wash. Rev.Code § 48.20.142. Because we have not yet addressed whether each state's statutorily-required limitation of action provision is the most analogous state law statute of limitations for ERISA causes of action for disability benefits, our opinion only addresses the proper accrual date for ERISA causes of action concerning disability benefits for claims against plans that have the requisite nexus with California and are required, by California state law, to contain Section 10350.11's compulsory limitation of action provision.

The court decided that the most reasonable construction of the phrase "period for which the Company is liable" was "each month of disability." *Id.* at 560. Consequently, the court determined that "[w]ritten proof of loss is due within ninety days after each monthly period, and any action must be brought within three years of the date that proof of loss is due." *Id.*

This interpretation, which found that "period" referred to each monthly period for which the plan was obligated to provide disability benefits, created the rolling accrual rule. As the court explained, "[f]or each month that a claimant is disabled and the company fails to make payment, *a separate cause of action accrues.*" *Id.* (emphasis added). Consequently, the court reversed the district court because the insurer's "failure to pay Nikaido each month that he was disabled commenced a three-year limitations period" so "any monthly claims [the plaintiff] can assert for three years prior to filing suit are not barred by the statute of limitations." *Id.*

2.  *Williams v. UNUM Life Insurance Co.:* the General Federal Accrual Rule

In *Williams,* this court again had to determine whether a participant's ERISA cause of action against a disability insurance plan was time-barred. The court followed the *Nikaido* court's application of Section 10350.11's statute of limitations to ERISA causes of action. *See Williams,* 113 F.3d at 1111 ("We have previously held that the California limitations statute applicable to actions on disability policies applies to ERISA claims for disability benefits."). The *Williams* court further recognized that, "in *Nikaido* we held that because the California Insurance Code Section 10350.11 specifies the time of accrual, *it also determines when an ERISA disability claim accrues.*" *Id.* at 1112 (emphasis added). Characterizing the *Nikaido* case as one involving an insured that did not provide adequate proof of loss,[5] the court explained that *Nikaido*'s application of the Section 10350.11 accrual provision would apply only in cases in which the insured failed to provide adequate proof of loss. *See id.* ("Logically, this accrual provision applies only in cases where an insured failed to provide adequate proof of loss because in such cases the insurer is ordinarily under no duty to inform the insured whether his claim has been approved."). Because the *Williams* court was not faced with an inadequate proof of loss,[6] it explained what it described as the "general federal rule," under which a plan participant's cause of action accrues "either at the time benefits were actually denied . . . or when the insured has reason to know that his claim has been denied." *Id.*

3.  Wetzel's Claim: Rolling Accrual Rule or General Federal Accrual Rule?

After the *Williams* court's limitation of *Nikaido* to cases in which an insured failed

**5.** It is not clear that this is an accurate characterization of what occurred in *Nikaido,* and it was not the basis for the *Nikaido* court's decision. In *Nikaido,* the insured had received benefits for more than seven years before the insurance company notified him that it was discontinuing his benefits because it believed that he was no longer disabled. The insured did not avail himself of the review procedure in the plan. But that does not mean that he had failed to provide adequate proof of loss. Rather, he had provided proof of loss and then the insurance company had denied his benefits after paying them for more than seven years. *See Nikaido,* 42 F.3d at 558–59; *cf. Trio of Ninth Circuit Cases Further Explore Statute of Limitations Issues*

*with Respect to Benefit Claims but, Other than Announcing the Notice–Prejudice Rule, Do Little to Clarify Matters,* 6 No. ERISA Litig. Rep. 20, 21 (1997) ("We cannot imagine why the court . . . thought that was what *Nikaido* held.").

**6.** The *Williams* court left open the possibility that its case was actually an inadequate proof of loss case, which would be governed by *Nikaido*'s accrual date and resulting rolling accrual period. *See Williams,* 113 F.3d at 1112 (indicating that "[t]he district court never determined whether Williams provided proof of disability that was adequate to put UNUM on notice of a claim").

to provide adequate proof of loss, there are two possible accrual dates for ERISA causes of action for disability insurance benefits like that at issue in *Nikaido, Williams,* and our own case: (1) if the insured failed to provide the required proof of loss, *Nikaido* 's accrual rule (when proof of loss was required to be furnished) would apply; (2) if the insured had provided the requisite proof of loss, the *Williams* "general federal rule" (at the time benefits were actually denied or when the insured has reason to know that his claim has been denied) would apply. *See Williams,* 113 F.3d at 1112. In this case, the district court determined that the *Williams* court's general federal accrual rule applied to Wetzel's claim. In doing so, it skipped a preliminary step in determining which accrual rule governs the plan participant's claim. Because the appropriate accrual date depends upon whether the insured provided adequate proof of loss, a necessary preliminary determination is to determine what would constitute adequate proof of loss. Only after the district court determines what "adequate proof of loss" is, *see Williams,* 113 F.3d at 1112, can the court determine whether the insured provided adequate proof of loss. Only after the district court determines whether the insured provided adequate proof of loss can the court determine the appropriate accrual date for statute of limitations provisions under the framework established in *Williams.*

In *Williams,* the court explicitly indicated that it could not determine whether or not the plaintiff had provided adequate proof of loss. *See Williams,* 113 F.3d at 1112 ("The district court never determined whether Williams provided proof of disability that was adequate to put UNUM on notice of a claim."). Consequently, our *Williams* opinion provided no explicit guidance to district courts on how to determine whether adequate proof of loss had been provided so that the court could determine which accrual rule to utilize. *See id.* ("Whether adequate proof was provided is a question of fact. Thus, we remand for the trier of fact to decide this ques-

tion."). Fortunately, our precedents make clear that the question whether an insured has failed to file an adequate proof of loss, thus determining the applicability of the rolling accrual rule established in *Nikaido* or the general federal rule established in *Williams* for a given claim, is determined by the provisions of the insurance policy.

As the *Nikaido* court explained, "when proof of loss must be furnished" is determined by the proof of loss provisions of the insurance policy. *See Nikaido,* 42 F.3d at 560. Although the *Williams* court did not explicitly indicate how to determine whether adequate proof of loss had been provided, its instructions to the district court on remand make clear that the *Williams* court agreed that the insurance policy provisions determine whether or not adequate proof of loss had been provided. The *Williams* court indicated that, on remand, if the Compulsory Standard *"proof of loss provision is read into the UNUM policy "* then "Williams was required to submit proof of loss for his continuing disability within 90 days after the termination of each period for which UNUM was liable." *Williams,* 113 F.3d at 1113 (emphasis added). The *Williams* court's instructions to the district court make clear that the proof of loss provisions of the insurance policy determine when proof of loss was required to be furnished, because the court made clear that whether or not *Nikaido* 's rolling accrual rule applied depended whether or not the Compulsory Standard Proof of Loss Provision of Section 10350.7 was read into the policy. *See Williams,* 113 F.3d at 1113 (indicating that, if "the terms of the California Insurance Code section 10350.7 must be read into the UNUM policy," then "the *rolling accrual* rule established in *Nikaido* would apply").

■ Turning to the LTD Policy's proof of loss provision, it becomes clear that the district court erred in granting summary judgment in favor of Reliance. The LTD Policy's Proof of Loss provision provides, in relevant part:

For any Total Disability covered by this Policy, which provides for periodic pay-

ment based upon continuing Total Disability, written proof must be sent to us *within ninety (90) days after the termination of the period for which we are liable.*

LTD Policy at 4.0 (emphasis added). Under this provision, in order to determine when proof of loss must have been furnished so that we can determine if adequate proof of loss was provided, we must decide the meaning of the phrase "the period for which we are liable," an inquiry all-but-identical to that engaged in by the *Nikaido* court. *See Nikaido,* 42 F.3d at 560 ("To determine when proof of loss must be furnished and when the cause of action accrues, we must decide the meaning of the phrase 'the period for which the Company is liable.'").

In making this determination, we note that the LTD Policy's proof of loss provision is substantially the same as the proof of loss provision at issue in *Nikaido* [7] and required by the Compulsory Standard Proof of Loss Provision.[8] We must consider the *Nikaido* and *Williams* courts' interpretation of the wording of the policies at issue in those cases because one panel of this court should respect an earlier panel's interpretation of substantially identical contract language. This deference is especially appropriate when we interpret contractual provisions that are required to be included in insurance contracts by state

law, because the statutorily-mandated language is designed to ensure that the contracts are interpreted consistently.

As both the *Nikaido* and *Williams* courts made clear, the "period" at issue refers to each month of disability. *See Nikaido,* 42 F.3d at 560 ("Thus 'the period for which the Company is liable' refers to each month of disability."); *Williams* 113 F.3d at 1113 (instructing the district court how to interpret "period for which the insurer is liable" contained in the Compulsory Proof of Loss Provision to allow "the *rolling accrual* rule established in *Nikaido*"). Therefore, Wetzel was required to provide proof of loss for each month of his disability. Under Section 10350.11,[9] Wetzel's claims were timely for any monthly periods for which proof of loss was required to be filed within three years of the date Wetzel filed his complaint. Because the district court never determined whether Wetzel provided proof of loss for each month of his disability, the order granting summary judgment in favor of Defendants is reversed, and this case is remanded to the district court. On remand, the district court should determine for which months Wetzel gave adequate proof of loss. The *Williams* general federal accrual rule will apply to Wetzel's claims for any of these months. The *Nikaido* rolling accrual rule will govern Wetzel's claims for any remaining months.[10]

7. The Proofs of Loss provision in the *Nikaido* plan provided:
   Written proof of loss must be furnished to the Company, in case of claim for loss for which this Policy provides a periodic payment contingent upon continuing loss, *within 90 days after the termination of the period for which the Company is liable.*
   *Nikaido,* 42 F.3d at 559–60 (emphasis added).

8. The Proof of Loss Compulsory Standard Provision provides, in relevant part:
   Written proof of loss must be furnished to the insurer ... in case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss *within 90 days after the termination of the period for which the insurer is liable ....*
   Cal. Ins.Code § 10350.7 (emphasis added).

9. Our decision today is based solely on the text of Section 10350.11 and the language of

the LTD Policy's proof of loss provision. We do not address the potential effect of any tolling agreement between the parties on the timeliness of Wetzel's claims.

10. Because we have determined that the factual record does not indicate that Wetzel's claims are time-barred, we reverse the district court's summary judgment. We do not address in any way the merits of Wetzel's claim for disability benefits nor do we consider the effect of the purported tolling-agreement on the timeliness of Wetzel's claims. We also leave for another day the resolution of the issue of the effect of informal administrative appeal and review procedures upon the accrual date of a plan participant's claims for purposes of determining whether the participant's claims are time-barred. The district court addressed the statute of limitations is-

## III

The Dissent claims that we (1) create ambiguity where none exists; (2) ignore controlling precedent; (3) conflict with the precedent of all other circuits and district courts that have considered the issue; and (4) essentially eliminate the statute of limitations in ERISA claims like that at issue in this case. *See* Dissent at 1172. Because of the confusion in this area, we respond to each of these claims in turn in the hopes of explaining why our reconciliation of our decisions in *Nikaido* and *Williams* is the only way to give effect to both *Williams* and *Nikaido*.[11] We begin with the most important of these claims: the controlling precedents in this area of the law. Because we feel that our precedents require our decision today, the remaining contentions are considered only briefly. Even if we were to believe that our opinion today somehow creates ambiguity, creates a conflict with out-of-circuit authority, or undercuts the purposes of a statute of limitations, we could not decide our case today in a way contrary to our controlling precedents.

### A. Conflict With Controlling Precedent

The Dissent claims that our opinion "conflates *Williams*' two separate limitations on *Nikaido*." Dissent at Fn.1 p. 1174. This claim, however, is based upon a misreading of *Williams*, which in fact created the ambiguity that we try to alleviate in this opinion. The Dissent claims that "*Williams* provides a clear path for courts to follow." Dissent at 1176. This clear path involves a two-step inquiry: if the plaintiff had submitted adequate proof

of loss then his cause of action would be timely if filed within three years after he knew or had reason to know the insurance company had denied his claim; or (2) if, and apparently only if, the plaintiff failed to provide adequate proof of disability then his cause of action accrued when he was required to provide such proof, giving rise to *Nikaido*'s rolling accrual rule. Dissent at 1174–75. Under such an interpretation of *Williams*, the policy language becomes irrelevant to the accrual issue.

We believe that the difference between *Williams* and *Nikaido* was the different language in the insurance policies at issue in those cases. This is apparent because the *Williams* court indicated that, if substantially identical language was read into the policy on remand, the same rolling accrual rule would apply as in *Nikaido*. *See Williams*, 113 F.3d at 1113–14. In basing our decision on this distinction between *Nikaido* and *Williams*—the different contract language in the insurance policies in those cases-we follow the only other published opinion of this court that has considered this issue. In *Cisneros v. UNUM Life Insurance Co. of America*, 134 F.3d 939 (9th Cir.1998), this court again addressed the same non-compliant proof of loss provision addressed by the *Williams* court. The court made clear that "[t]he *Nikaido* holding was based on the particular contract language at issue in that case" and the rolling accrual rule "simply does not apply to the proof-of-loss provision in the UNUM policy, which involves different language." *Cisneros*, 134 F.3d at 944.[12] As the *Cisneros* court made plain, the availability of the rolling

---

sue in the context of the general federal accrual rule established under *Williams*. Because at least some of Wetzel's claims are likely governed by *Nikaido*'s rolling accrual rule, we will wait to determine the influence of these review procedures upon Wetzel's accrual date until after the district court determines on remand which accrual rule governs which portions of Wetzel's claim. Because we reverse the district court's summary judgment in favor of Defendants, we also do not have to decide whether the district court abused its discretion in striking a supplemen-

tal declaration that was untimely filed under Central District Local Rule 7.9.

11. The Dissent suggests that we overrule *Williams*, in violation of this circuit's rule that one three-judge panel cannot overrule another panel. We believe, however, that we give effect to both *Nikaido* and *Williams*.

12. In *Cisneros*, the district court had entered summary judgment in favor of the insurance company on the ground that the insured's proof of loss was untimely. *See id.* at 942.

accrual rule *depends upon the proof of loss provision in the insurance policy:* if the policy legally contains the proof of loss language in the UNUM policy at issue in *Williams* and *Cisneros,* then the rolling accrual rule does not apply, if the policy contains the proof of loss language required by Section 10350.7, the rolling accrual rule applies. Like the *Williams* court, the *Cisneros* court expected that the Compulsory Standard Proof of Loss Provision required by Section 10350.7 would be read into the policy on remand and directed the district court to apply *Nikaido* 's rolling accrual rule, even though the insured had provided proof of loss. *See id.* (directing the district court on remand to "consider the effect of section 10350.7, as interpreted in *Nikaido* "). This directly contradicts the Dissent's suggestion that, regardless of policy language, *Nikaido* 's rolling accrual rule would apply only if the insured failed to provide adequate proof of loss.

*Cisneros* thus controls our decision today because it is our only published opinion that considers both *Nikaido* and *Williams.*[13] Just as the *Cisneros* court directed the district court on remand in that case to apply *Nikaido* 's rolling accrual rule if Section 10350.7's Compulsory Standard Proof of Loss Provision was read into that insurance policy, *see id.* (directing the district court to "consider the effect of section 10350.7, *as interpreted in Nikaido* " if Section 10350.7's Compulsory Standard Proof of Loss Provision was read into the policy on remand) (emphasis added), *Cisneros* requires us to apply the rolling accrual rule because the LTD Policy already contains a proof of loss provision that is substantially identical to the provision at issue in *Nikaido* and required by Section 10350.7. Thus, our decision today is required in order to remain consistent with our circuit's controlling precedent.

Our decision today, then, is consistent with *all* of our circuit's precedents that have considered Section 10350.11's statute of limitations and contractual language similar to the LTD Policy's proof of loss provision.[14] In *Nikaido,* the insurance policy's proof of loss provision comported with Section 10350.7 and the rolling accrual rule

**13.** In addition to *Williams,* the Dissent claims that our decision today is inconsistent with a number of our circuit's precedents that applied the general federal accrual rule in ERISA causes of action. None of those cases, however, applied a statute of limitation like that in Section 10350.11, which as the *Nikaido* court explained, "defines that [limitations] period by reference to a specific accrual date." *Nikaido,* 42 F.3d at 559. For this very reason, the *Nikaido* court expressly distinguished one of the cases relied upon by the Dissent, *Menhorn v. Firestone Tire & Rubber Co.,* 738 F.2d 1496 (9th Cir.1984). *See Nikaido,* 42 F.3d at 559 n. 2 ("In *Menhorn,* the court did not consider a limitations provision like the one at issue here.").

**14.** The Dissent chides us for confusing "when the policy requires the beneficiary to provide proof of loss" with the question of "whether, substantively, adequate proof of loss was provided." Dissent at 1174. This assertion is curious, given that the Dissent recognizes that under *Nikaido* "each monthly payment has its own statute of limitations." Dissent at 1173. The Dissent apparently fails to realize why each monthly payment has its own statute of limitations. As the *Nikaido* court explained, "[f]or each month that a claimant is disabled and the company fails to make payment, a separate cause of action accrues." *Nikaido,* 42 F.3d at 560; *cf. Williams,* 113 F.3d at 1113–14 (indicating that if the Compulsory Standard Proof of Loss Provision was read into the insurance policy "a new cause of action would accrue after each such period"). These separate causes of action, with separate statutes of limitations, do not arise by magic or judicial fiat. Separate causes of actions accrue because the relevant language in an insurance policy's proof of loss provision requires a separate proof of loss for each monthly period for which the insurer was liable. *See Nikaido,* 42 F.3d at 559 ("Because the cause of action accrues when proof of loss is due, and proof of loss is due monthly for a continuing disability, the Plan creates a relationship akin to an installment contract."); *Cisneros,* 134 F.3d at 944 (indicating that *Nikaido* "held that proof was due after each month of continuing disability and that a new cause of action with a new three-year statute of limitations period also began each month"). Therefore, particular contract language requires the insured to file a new, separate proof of loss for each month of disability. The adequacy of that proof of loss necessarily depends upon the filing of the proof of loss. For example, the LTD Policy makes clear that Reliance would only "pay a Monthly Benefit if an Insured … submits satisfactory proof of Total Disability." LTD Policy at 7.0. Under

applied. *See Nikaido,* 42 F.3d at 559–60. In *Williams,* the insurance policy's proof of loss provision was different than the Compulsory Standard Proof of Loss Provision, but the court indicated that, if on remand the Compulsory Standard Proof of Loss Provision was read into the policy, the rolling accrual rule would apply. *See Williams,* 113 F.3d at 1113–14. In *Cisneros,* the insurance policy's proof of loss provision again was different than the Compulsory Standard Proof of Loss Provision, and the court indicated that, if on remand the Compulsory Standard Proof of Loss Provision was read into the policy, then the rolling accrual rule would apply. *See Cisneros,* 134 F.3d at 944. In our case, the LTD Policy's proof of loss provision comports with Section 10350.7, so the rolling accrual rule should apply.[15]

## B. Purpose of Statute of Limitations

The Dissent finally contends that we "undermine[ ] the purpose of the statute of limitations." Dissent at 1177. This concern is based this claim on the possibility that a plaintiff can file a claim 30 or more years after the defendant has denied the claim and the plaintiff knows of the denial, risking lost evidence, fading memories, and disappearing witnesses. Although we understand these concerns, we do not share them.

First, these risks result from the *Nikaido* court's adoption of Section 10350.11 as the applicable statute of limitations period. As the *Nikaido* court explained, the interaction of Section 10350.11's, which defines the limitations period by reference to a particular accrual period and Section 10350.7's statutorily-mandated proof of loss provision, creates "a relationship akin to an installment contract," *Nikaido,* 42 F.3d at 560, that could last as long as the insured's covered disability. The Dissent's concerns suggest that the *Nikaido* court should have adopted a different statute of limitations. Even if we shared these concerns, however, we would not substitute our judgment for the judgment of an earlier panel simply because we disagreed with the earlier panel. *See Jeffries v. Wood,* 114 F.3d 1484, 1511 (9th Cir.1997) ("as the law of the circuit operates in our court, no three-judge panel may reconsider a rule of law embodied in a prior published opinion; that can only be done by the court sitting en banc.").

Second, these concerns seem especially inapplicable to a case such as Wetzel's.[16] Reliance denied Wetzel's claims because it believes that Wetzel's disability is psychiatric in nature, which Reliance claims is subject to the LTD Policy's two-year limit on claims relating to a mental disorder. Under *Nikaido's* interpretation of the LTD Policy's proof of loss provision, which we have adopted, Wetzel must submit proof of loss for each month of his disabili-

---

*Nikaido's* interpretation of the LTD Policy's proof of loss provision, a separate proof of loss is required for every month of disability. The adequacy of the proof of loss that an insured provides would thus necessarily require him to in fact file the required separate proof of loss for each monthly period.

**15.** Our opinion attempts to give effect to all portions of the *Williams* opinion. Although the rolling accrual rule applies in this case because Wetzel's claims were timely for any monthly periods for which proof of loss was required to be furnished within three years of the filing of the complaint, we have also indicated that *Williams'* general federal rule would apply to any of Wetzel's claims for monthly benefits for which he provided ade-

quate proof of loss. At this stage in the proceedings, the factual record does not make clear whether Wetzel provided adequate proof of loss for any of his monthly claims for the three years and ninety days before he filed suit.

**16.** As the New York Court of Appeals explained in *Panepinto v. New York Life Insurance Co.,* 90 N.Y.2d 717, 665 N.Y.S.2d 385, 688 N.E.2d 241 (1997), these risks are minimized in all cases because "[a]n insured is not likely to wait years before filing proof of loss because he will want to receive benefits as soon as possible." *Panepinto,* 665 N.Y.S.2d 385, 688 N.E.2d at 244 (quoting *Laidlaw v. Commercial Insurance Co.,* 255 N.W.2d 807, 812 (Minn.1977)).

ty. These new claims will timely provide the very evidence that Reliance would need to support its denial of Wetzel's claims. Consequently, fears about lost evidence, faded memories, and disappearing witnesses are not as justified as they might be in a different case.

## C. Ambiguity

The Dissent suggests that we create ambiguity where none currently exists. Our understanding of the three controlling precedents, *Nikaido, Williams,* and *Cisneros,* however, mandates our decision today.[17] To the extent that these precedents were misunderstood, we hope that our opinion resolves the ambiguity.[18]

17. To the extent that there is any ambiguity, we believe it is traceable to the *Williams* opinion. The ambiguity arises from two seemingly inconsistent holdings in *Williams*. First, the court suggested that *Nikaido* 's rolling accrual rule only applied in cases where the insured failed to provide adequate proof of loss. *See Williams,* 113 F.3d at 1112 ("Logically, this accrual provision applies only in cases where an insured failed to provide adequate proof of loss because in such cases the insurer is ordinarily under no duty to inform the insured whether his claim has been approved."). Nevertheless, the court held that the Compulsory Standard Proof of Loss Provision itself required the application of the rolling accrual rule. *See id.* at 1114 (instructing the district court that "[t]riable issues of fact remain regarding whether Williams provided adequate proof of disability and when he should have known his claim was denied" and that *"[a]lternatively,* if the UNUM policy contravenes California Insurance law, Williams' claims for the three years prior to the commencement of this action are timely") (emphasis added); *see also id.* at 1113–14 (indicating that "[i]f the proof of loss provision is read into the UNUM policy, Williams was required to submit proof of loss for his continuing disability within 90 days after the termination of each period for which UNUM was liable" and that "[t]herefore, a new cause of action would accrue after each such period").

18. The Dissent points to two district court cases that applied *Williams* ' general federal rule. We make no comment about the merits of those decisions.

19. The only other circuit to address this precise issue has been the Third Circuit. In

## D. Other Precedents

The Dissent also asserts that we "ignore[ ] a *uniform* body of precedent from other circuits applying the same [general federal accrual] rule." Dissent at 1176 (emphasis in original). If necessary to follow our controlling precedents, we would ignore such a uniform body of out-of-circuit precedent. Nevertheless, it is clear that our decision today is consistent with the *relevant* out-of-circuit authority because these cases do not apply statutes of limitations that "define[ ] that [limitations] period by reference to a specific accrual period," like Section 10350.11.[19] *Nikaido,* 42 F.3d at 559.

*Hofkin v. Provident Life & Accident Insurance Co.,* 81 F.3d 365 (3d. Cir.1996), the Third Circuit considered similar contractual provisions and found that the insured's cause of action accrued only after proof of loss was due, even though the insured had filed several proofs of loss. *See Hofkin,* 81 F.3d at 372–74. In *Hofkin,* the court made clear that the statute of limitations issue depended solely upon its interpretation of the contractual language, language that was substantially the same as the provisions in the LTD Policy. *See id.* at 369. Our decision that the LTD Policy's proof of loss provision determines the accrual date is also consistent with the relevant out-of-circuit district court opinions that have considered the issue. *See, e.g., Liberto v. Mutual Benefit Health & Accident Ass'n,* 323 F.Supp. 1274 (W.D.Pa.1971); *Oglesby v. Penn Mut. Life Insurance Co.,* 877 F.Supp. 872 (D.Del.1994).

The Dissent suggests that we misread *Hofkin* because the Third Circuit rejected our holding in *Nikaido.* Dissent at fn. 3 p. 1177. In doing so, the Dissent ignores the relevant portion of the Third Circuit's decision in *Hofkin.* In *Hofkin,* the district court had granted the insurer's motion to dismiss on statute of limitations grounds. *See Hofkin,* 81 F.3d at 367. The insured had provided several proofs of loss. *See id.* at 368. In deciding whether the insured-plaintiff's claim was time-barred, the Third Circuit indicated that the resolution of the statute of limitations issue depended upon the language of the contract. *See id.* at 369 ("The disposition of this case rests upon our interpretation of the Provident policy's 'Legal Actions' clause and 'Proofs of Loss' clause."). That language was substantially identical to the language in *Nikaido* and in the LTD Policy and was required by Pennsyl-

## IV

Because we are confident that our decision today is mandated by our precedents, we hold that the LTD Policy's language gave Wetzel a separate cause of action for each monthly period of his disability for which he was entitled to receive long-term disability benefits. Under the Section 10350.11's statute of limitations, Wetzel had three years after the proof of loss was due for each monthly claims within which to file his complaint. Under *Williams,* any monthly claim that was timely under the contract language is still subject to the general federal accrual rule *if* Wetzel provided adequate proof of loss for that monthly period.

### REVERSED AND REMANDED.

GRABER, Circuit Judge, dissenting:

The majority's opinion creates ambiguity where none exists, ignores controlling precedent, conflicts with the precedent of all other circuits (as well as district courts) that have considered the issue, and essentially eliminates the statute of limitation for ERISA claims. Therefore, I respectfully dissent.

### A. *Nikaido/Williams*

The majority purports to "navigate the shoals" of ambiguity resulting from this court's decisions in *Nikaido v. Centennial Life Ins. Co.,* 42 F.3d 557 (9th Cir.1994), and *Williams v. UNUM Life Ins. Co. of Am.,* 113 F.3d 1108 (9th Cir.1997). *See* maj. op. at 1162–63. Resolving that perceived ambiguity, the majority holds that *Nikaido,* rather than *Williams,* governs this appeal. *See id.* at 1166–67. Every

district court in our circuit to address this issue, however, including the district court here, has found those cases to be unambiguous and has interpreted them contrary to the majority's opinion. *See Densberger v. Sutter Home Winery Long Term Disability Benefits Plan,* 1999 WL 592198, at *3 (N.D.Cal. Aug.2, 1999); *Giles v. Reliance Standard Life Ins. Co.,* 1999 WL 92649, at *3–4 (N.D.Cal. Feb., 16, 1999); *Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program,* CV 97–3461 LGB, at 22–24 (C.D.Cal. Aug. 27, 1997).

In *Nikaido,* 42 F.3d at 558, the plaintiff became disabled in 1980, and he began receiving long term disability (LTD) insurance benefits. Seven years later, the insurance company told the plaintiff that it would not continue to pay benefits, because it believed that he was no longer disabled. *See id.*

The LTD plan gave the plaintiff 60 days within which to submit a request for a review of that decision. *See id.* at 559. The plaintiff, however, did not request a review. *See id.* About five years later, the plaintiff brought an action against the insurance company. *See id.* The district court held that the action was time-barred, and the plaintiff appealed. *See id.*

ERISA does not provide a statute of limitations, so "federal courts look to the most closely analogous state statute of limitations." *Id.* Applying that principle, the court in *Nikaido* first held that California Insurance Code § 10350.11 was the "most closely analogous state statute of limitations" provision. *Id.* Thus, the court ap-

---

vania insurance laws similar to Section 10350.7 and Section 10350.11. *See id.* at 367–68. The court did reject *Nikaido*'s interpretation of the "period for which the Company is liable" language in the proof of loss provision, instead interpreting the language to refer to the entire period of covered disability, rather than merely each covered month of disability. *See id.* at 372–74. Thus, under the Third Circuit's interpretation, the limitations provision was not triggered until the insured reached age fifty-five, the expiration date of the policy. *See id.* at 372. Therefore, al-

though the Third Circuit allowed the insured to recover for an infinitely longer period when suit was filed, rather than only those monthly periods for which proof of loss was due within three years of filing suit, *the Third Circuit reached the same conclusion we reach today on the accrual issue the limitations provision was not "triggered" until the proof of loss was due. Id.* at 372 The Third Circuit simply defined the "period" for which proof of loss was due to encompass an infinitely longer period, perhaps as long as the insured was alive. *See id.* at 373.

plied its three-year limitations period. *See id.*

Although state law determines the limitations period, federal law generally determines when an ERISA claim accrues. *See id.* The court in *Nikaido*, however, looked again to the California Insurance Code, because "the state statute that prescribes the limitation period defines that period by reference to a specific accrual date." *Id.* Pursuant to California Insurance Code § 10350.11, a cause of action accrues at "the time written proof of loss is required to be furnished." California Insurance Code § 10350.7 further defines that date:

> Written proof of loss must be furnished to the Company, in case of claim for loss for which this Policy provides any periodic payment contingent upon continuing loss, within 90 days after the termination of the period for which the Company is liable.

The court held that "the period for which the Company is liable" refers to each monthly disability payment. *Nikaido*, 42 F.3d at 560. Thus, each monthly payment has its own statute of limitations period:

> Because the cause of action accrues when proof of loss is due, and proof of loss is due monthly for a continuing disability, the Plan creates a relationship akin to an installment contract. For each month that a claimant is disabled and the company fails to make payment, a separate cause of action accrues.

*Id.* That being so, the statute of limitations prevented the plaintiff from seeking payment only for the monthly claims that accrued more than three years before he filed the action. *See id.*

In this case, the district court did not rely on *Nikaido*. Instead, it relied on *Williams. See Wetzel*, CV 97–3461 LGB, at 23–24 (relying on *Williams* and holding that "the requirement of proof of loss accrual date discussed in *Nikaido* is not applicable in the instant case") (internal quotation marks omitted).

In *Williams*, 113 F.3d at 1110, the plaintiff similarly became disabled and sought payments under his LTD plan. It was unclear from the record, however, whether the plaintiff had submitted proof of loss (or whether any such proof was adequate). *See id.* at 1110–14. This court highlighted the importance of that missing factual information:

> If an insured files a claim under an ERISA plan, ERISA requires that the insurer provide adequate notice of denial in writing. UNUM's policy required Williams to provide proof of disability to claim benefits. If such proof was provided, then UNUM was *under a duty to provide notice of denial.* The general federal rule would apply that an ERISA cause of action accrues *either at the time benefits were actually denied or when the insured has reason to know that his claim had been denied. Alternatively, if Williams failed to provide proof of disability, then Nikaido applies and Williams' cause of action accrued when proof of disability was due.*

*Id.* at 1112 (emphasis added) (citations and footnote omitted). *Williams* thus plainly limits *Nikaido* to instances in which an insured fails to provide adequate proof of loss:

> In *Nikaido*, the insured did not provide adequate proof of loss. Thus, we held that his claim accrued "after the time written proof of loss [was] required to be furnished." Logically, this accrual provision applies only in cases where an insured failed to provide adequate proof of loss because in such cases the insurer is ordinarily under no duty to inform the insured whether his claim has been approved.

*Id.* (quoting *Nikaido*, 42 F.3d at 559) (alteration in original).

Because it was unclear in *Williams* whether adequate proof of loss had been provided, the court provided a two-step inquiry for the district court to employ on remand: (1) If the plaintiff had submitted adequate proof of loss, i.e., "proof that was adequate to put UNUM on notice of a claim," then "his cause of action would be timely if filed within three years after he

*knew or had reason to know UNUM had denied his claim." Id.* at 1112 (emphasis added). (2) If the plaintiff "failed to provide adequate proof of disability . . ., his cause of action accrued *when he was required to provide such proof,*" i.e., *Nikaido*'s proof-of-loss rule would apply. *Id.* at 1113 (emphasis added). The policy at issue in *Williams* required proof of loss "within 30 days of the request for proof." *Id.* Thus, proof-of-loss was required on a specific date. *See id.* The court, however, noted that California may require the terms of California Insurance Code § 10350.7—the same provision at issue in *Nikaido*—to be read into the policy. *See id.* If it did, then *Nikaido*'s continuing-loss rule would apply. *See id.* at 1113–14 ("If the proof of loss provision is read into the UNUM policy, Williams was required to submit proof of loss for his continuing disability within 90 days after the termination of each period for which UNUM was liable. Therefore, a new cause of action would accrue after each such period.").[1]

### B. *The Majority's Opinion*

The majority apparently accepts the foregoing framework, including *Williams'* two-step inquiry. *See* maj. op. at 1165–66. Nevertheless, the majority holds that the "adequacy" of proof of loss under step one depends on *when* proof of loss is required.

*See* maj. op. at 1166–67. Contrary to the majority's opinion, the issue of *when* proof of loss is required arises solely under step two of *Williams. See Williams,* 113 F.3d at 1113 ("[I]f Williams *failed to provide adequate proof* of disability . . ., his cause of action accrued *when* he was required to provide such proof.") (emphasis added). The question under step one, however, is solely *whether, substantively,* adequate proof of loss was provided. *See id.* at 1112 ("If such proof was provided, then UNUM was under a duty to provide notice of denial."). Moreover, "adequate proof of loss" under step one merely means "proof of disability that was adequate to put [the insurer] on *notice of a claim." Id.* (emphasis added). "Adequacy" thus does not turn on *when* the policy requires the beneficiary to provide proof of loss, but solely on the *type* of information provided.[2]

The district court here correctly analyzed and applied the two-step inquiry from *Williams:*

The Ninth Circuit held [in *Williams*] that there are two different potential accrual dates, depending on the facts of the case. The first potential accrual date may be termed the "reason to know of denial" accrual date. If an insured files a claim under an ERISA plan, ERISA requires the insurer provide ad-

---

1. The majority's opinion conflates *Williams'* two separate limitations on *Nikaido.* First, *Nikaido*'s *proof-of-loss rule*—that the statute of limitations accrues from the date on which proof of loss is required—applies only when the plaintiff fails to provide adequate proof of loss. Second, *Nikaido*'s *continuing-loss rule* applies only when: (1) the plaintiff fails to provide adequate proof of loss *and* (2) the policy contains wording similar to *Nikaido*'s policy (or if that wording must be incorporated by law). *See Giles,* 1999 WL 92649, at *4 n. 3 ("[P]laintiff . . . argues that because RSL's policy does not comply with California Insurance Code § 10350.7, *Nikaido*'s rolling statute of limitations applies to this case. In *Williams,* the court indicated that where an insurer's policy violates California law, *Nikaido*'s proof of loss requirement applies and the terms of California Insurance Code § 10350.7 must be read into the policy. As discussed

earlier, however, the *Nikaido* holding only applies to cases where the insured fails to provide adequate proof of disability.").

2. The majority asserts that *Cisneros v. UNUM Life Ins. Co. of America,* 134 F.3d 939 (9th Cir.1998), is pertinent and that it supports the majority's reasoning. *See* maj. op. at 1169. However, that case turned on whether the insurer had suffered prejudice from the claimant's untimely submission of a proof of loss. *See id.* at 948. The court discussed *Nikaido* only in considering whether the claimant had in fact complied with the contractual time limits for filing a proof of loss. *See id.* at 943–44. Naturally, the wording of the contract is essential to answering such a question. But *Cisneros* does not pertain to the statute of limitations *at all;* accordingly, it does not advance the discussion.

equate notice of denial in writing. Therefore, once an insured files a claim or provides proof of loss and there is a denial, the plan administrator is under a duty to provide notice of denial.

The second potential accrual date may be termed the "requirement of proof of loss" accrual date, and is the type of accrual date discussed in the *Nikaido* case. However, this type of accrual date applies *only if the insured fails to file a claim or provide proof of disability.*

*Wetzel,* CV 97–3461 LGB, at 23 (citations omitted) (emphasis added).

Neither party disputes the district court's holding that "Plaintiff did in fact file a claim and provided proof of loss *sufficient to put Defendants on notice*" of his claim. *Id.* (emphasis added). Having determined that *adequate* proof of loss had been provided, the district court held that *Williams'* denial-of-benefits rule applied, instead of *Nikaido's* proof-of-loss rule. *See id.* at 23–24.

Defendants *actually denied* Plaintiff's claim on October 4, 1993. *See id.* at 23. In the circumstances, the limitations period began running from that date. *Id.* at 23–24. Plaintiff filed this action on May 6, 1997. *See id.* at 5. Pursuant to *Williams,* Plaintiff's action was barred by the three-year statute of limitations. *See id.* at 24.

Every other court has applied *Williams* similarly, without any hint of problem or ambiguity. For example, in *Densberger,* the plaintiff argued that, pursuant to *Nikaido,* "the statute of limitation for ERISA starts fresh each month that defendant denies him benefits." 1999 WL 592198, at *3. The court summarily rejected the argument:

In *Nikaido,* the Ninth Circuit held that the three-year limitation period began anew each month that an insurer denied benefits to a claimant. Three years later in [*Williams*] the Ninth Circuit limited the *Nikaido* holding to "cases where an insured failed to provide adequate proof of loss because in such cases the insurer is ordinarily under no duty to inform the insured

whether his claim has been approved." "If such proof was provided ... an ERISA cause of action accrues either at the time benefits were actually denied ... or when the insured has reason to know that his claim has been denied."

*Williams* applies here. Plaintiff submitted proof of his claim by completing his application and referring defendant to the appropriate physicians. Thus, under *Williams,* the statute began running at least when plaintiff had reason to know that his benefits were denied.

*Id.* (citations omitted) (alterations in original); *see also id.* ("Plaintiff also argues that the documents ... never provided adequate proof of loss.... *Defendant responds, correctly, that the question is whether plaintiff 'provided proof of disability that was adequate to put [the insurer] on notice of a claim.'* Plaintiff submitted an application and referred defendant to his physicians, which would put defendant on notice that plaintiff had a claim for disability.... Thus, plaintiff has provided adequate proof of disability under *Williams.*") (quoting *Williams,* 113 F.3d at 1112) (emphasis added) (alteration in original).

The court in *Giles* similarly applied *Williams:*

Plaintiff argues that a new cause of action accrued each month that RSL refused to pay her disability benefits, citing [*Nikaido* ].

The *Nikaido* court held that the date on which the three-year statutory period begins to run is the time written proof of loss is required to be furnished. It found that the plaintiff's plan required written proof of loss within ninety days after each monthly period of disability....

. . . .

In *Williams,* however, the Ninth Circuit explicitly limited the holding of *Nikaido* to circumstances in which the insured failed to provide adequate proof of loss.... There, the Ninth Circuit held that if an insured provided proof that

*was adequate to put the insurer on notice of a claim,* the insured's cause of action would be timely only if filed within three years after the insured *knew or had reason to know the insurer had denied his claim* . . . .

. . . [P]laintiff alleges that she provided proof of loss, and this Court must apply the general federal rule of accrual that plaintiff's cause of action accrued when she knew or had reason to know that RSL denied her claim for benefits.

*Giles,* 1999 WL 92649, at *3–4 (emphasis added).

In summary, *Williams* provides a clear path for courts to follow. The majority simply has declined to follow that path, apparently because it disagrees with *Williams'* limitation of *Nikaido. See* maj. op. at 1165 n.5 ("It is not clear that this is an accurate characterization of what occurred in *Nikaido* and was not the basis for the *Nikaido* court's decision."). *Williams,* however, is the law of this circuit, and a three-judge panel lacks the power to ignore or overrule a prior panel's decision. *See United States v. Gay,* 967 F.2d 322, 327 (9th Cir.1992) ("As a general rule, one three-judge panel of this court cannot reconsider or overrule the decision of a prior panel."); *see also Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.),* 177 F.3d 774, 782 n. 8 (9th Cir.1999) ("A three-judge panel, however, lacks authority to overrule the decision of another panel.").

## C. *Other Precedent*

Contrary to the majority's suggestion, *Williams* did not announce a new or revolutionary rule of law. The majority's opinion not only conflicts with *Williams,* but also ignores other Ninth Circuit precedent, which has held consistently that a cause of action for recovery of benefits accrues, for statute of limitations purposes, when benefits are denied unequivocally. *See Canseco v. Construction Laborers Pension Trust for S. Cal.,* 93 F.3d 600, 602 n. 1 (9th Cir.1996) ("We have held that a cause of action for recovery of benefits accrues at the time the benefits are denied."); *Bolton*

*v. Construction Laborers' Pension Trust for S. Cal.,* 56 F.3d 1055, 1058 (9th Cir. 1995) ("Bolton's cause of action arose in 1987 when she was denied benefits."); *Price v. Provident Life & Accident Ins. Co.,* 2 F.3d 986, 988 (9th Cir.1993) ("The statute of limitations was therefore not triggered until Price learned of Provident's denial of benefits."); *Menhorn v. Firestone Tire & Rubber Co.,* 738 F.2d 1496, 1501 (9th Cir.1984) ("We accept the proposition that an ERISA cause of action based on a denial of benefits accrues at the time the benefits are denied.").

The majority's opinion also ignores a uniform body of precedent from other circuits applying the same rule: "Uniformly, courts recognize that an ERISA cause of action accrues when an application for benefits is denied." *Held v. Manufacturers Hanover Leasing Corp.,* 912 F.2d 1197, 1205 (10th Cir.1990) (citation and internal quotation marks omitted); *see also Union Pac. R.R. Co. v. Beckham,* 138 F.3d 325, 330 (8th Cir.) ("[T]he general rule in an ERISA action is that a cause of action accrues after a claim for benefits has been made and has been formally denied."), *cert. denied,* —— U.S. ——, 119 S.Ct. 56, 142 L.Ed.2d 43 (1998); *Cottrill v. Sparrow, Johnson & Ursillo, Inc.,* 100 F.3d 220, 223 (1st Cir.1996) ("Ordinarily, a cause of action under ERISA . . . accrue[s] when a fiduciary denies a participant benefits."); *Stevens v. Employer–Teamsters Joint Council No. 84 Pension Fund,* 979 F.2d 444, 451 (6th Cir.1992) ("An ERISA cause of action for benefits under ERISA does not arise until a claim for benefits has been made and formally denied."); *Rodriguez v. MEBA Pension Trust,* 872 F.2d 69, 72 (4th Cir.1989) ("An ERISA cause of action does not accrue until a claim of benefits has been made and formally denied."); *Jenkins v. Local 705 Int'l Bhd. of Teamsters Pension Plan,* 713 F.2d 247, 254 (7th Cir.1983) ("A cause of action under Section 502 of ERISA, 29 U.S.C. § 1132, arose when the trustees of the pension plan denied applicant's benefit application."); *Paris v. Profit Sharing Plan*

*for Employees of Howard B. Wolf, Inc.,* 637 F.2d 357, 361 (5th Cir.1981) ("We hold that for purposes of ERISA a cause of action does not accrue until an application is denied."). I would follow this uniform body of precedent.[3]

### D. *Purpose of the Statute of Limitations*

The majority's opinion also undermines the purpose of the statute of limitations. "[S]tatutory limitation periods are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) (citation and internal quotation marks omitted). "The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Id.* (citation and internal quotation marks omitted); *see also Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 352, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) (stating a similar proposition).

Under the majority's opinion, a plaintiff can file a claim 30 or more years after the defendant has formally denied the claim and the plaintiff knows of the denial. Even though "evidence [will have] been lost, memories [will have] faded, and witnesses [will have] disappeared," the plaintiff can still pursue claims that accrued during the most recent three years. This result undermines the very purpose of having a statute of limitations and effectively eliminates such limitations for

ERISA denial-of-benefit cases. I therefore DISSENT.

---

**3.** The majority cites only one circuit court case, *Hofkin v. Provident Life & Accident Ins. Co.,* 81 F.3d 365 (3rd Cir.1996), that it contends is consistent with its approach. *See* maj. op. at 1171–72 n.19. However, in *Hofkin,* the Third Circuit expressly rejected this court's reasoning in *Nikaido,* which is the very case on which the majority relies here. After discussing *Nikaido* and one other simi-

lar case from an intermediate appellate court in Kansas, the Third Circuit wrote: "We expressly reject and depart from this reasoning and analysis." *Hofkin,* 81 F.3d at 374. More importantly, however, the insurer in *Hofkin never issued a final denial of benefits* (which is the date that triggers the statute of limitations under the general federal rule). *See id.* at 368.